**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CORRECT TRANSMISSION, LLC | |
| Plaintiff, | CASE NO. 2:22-cv-00343 |
| v. | |
| NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, AND NOKIA OF AMERICA CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**NOKIA'S ANSWER, AFFIRMATIVE DEFENSES,**
**AND NOAC'S COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendants Nokia Corporation ("Nokia Corp."), Nokia Solutions and Networks Oy, and Nokia of America Corp. ("NoAC") (collectively, "Defendants" or "Nokia") file this Answer to the Complaint for Patent Infringement ("Complaint") filed by Correct Transmission, LLC ("Plaintiff" or "Correct Transmission") (Dkt. 1). Nokia Answers and avers as follows, with the numbered paragraphs corresponding to the like-numbered paragraphs of Plaintiff's Complaint. Except as hereinafter specifically admitted, qualified, or affirmatively alleged, Nokia denies each and every allegation, matter, or thing contained in the Complaint. Nokia specifically denies that Plaintiff is entitled to any relief whatsoever from Nokia.

The first paragraph of the Complaint is an introductory paragraph that does not require a response from Nokia.

1

## I.     NATURE OF THE ACTION[1]

1.      Nokia admits that the Complaint purports to bring a claim for patent infringement arising under the laws of the United States, but denies that Nokia has infringed any of the Asserted Patents. Nokia further denies that Correct Transmission is entitled to any relief whatsoever. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 1.

2.      Denied.

3.      Nokia admits that the Complaint purports to seek damages but denies that Correct Transmission is entitled to any relief whatsoever. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 3.

## II.     PARTIES

4.      Nokia lacks knowledge or information sufficient to admit or deny the allegations in paragraph 4 and therefore denies them.

5.      Nokia lacks knowledge or information sufficient to admit or deny the allegations in paragraph 5 and therefore denies them.

6.      Nokia admits that Nokia Corp. is a company organized under the laws of Finland. Nokia denies that Nokia Corp's principal place of business is located at Karaportti 3, FI-02160 Espoo, Finland and that Alcatel-Lucent S.A. merged into Nokia in 2016.

7.      Nokia admits that Nokia Solutions and Networks Oy is a corporation organized and existing under the laws of Finland and that Nokia Solutions and Networks Oy is a wholly owned subsidiary of Nokia Corp. Nokia denies that Nokia Solutions and Networks Oy's

---

[1] Headings and subheadings are copied from the Complaint for ease of reference only. These headings and subheadings do not require any response and do not constitute an admission or denial of any purported fact or allegation. To the extent a response is required to any allegation in the Complaint's headings or subheadings, Nokia denies those allegations.

principal place of business is located at Karaportti 3, 02610 Espoo, Finland.

8.      Nokia admits that NoAC is a Delaware corporation with U.S. headquarters in Dallas, Texas. Nokia admits NoAC may be served through its registered agent Prentice Hall Corporation System 211 E. 7th Street, Suite 620, Austin, Texas 78701. Nokia admits that NoAC is registered to do business in the State of Texas and has been since December 29, 1995. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 8.

9.      Nokia admits that NoAC is an indirect wholly owned subsidiary of Nokia Corporation and Nokia Solutions and Networks Oy.

10.     Nokia admits that the Complaint refers to Nokia Corp., Nokia Solutions and Networks Oy, and NoAC collectively as "Nokia."

11.     Nokia admits that NoAC offers for sale and sells the accused products. Nokia Corp. operates the domain, https://www.nokia.com, for the benefit of its subsidiaries, so that its subsidiaries can transact business with their customers. Nokia denies any remaining allegations of paragraph 11.

12.     Nokia admits that NoAC has transacted business in the Eastern District of Texas. Nokia admits that NoAC has offices located at 2525 South Highway 121, Lewisville, Texas 75056. Nokia further admits that NoAC has offices in the Eastern District of Texas where NoAC sells and/or markets its products, including offices in Lewisville and Plano, Texas. Nokia denies that NoAC has offices located at 601 Data Drive, Plano, Texas 75075.

13.     Nokia admits that NoAC has offices in Texas, including offices in the Eastern District of Texas. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 13 and therefore denies them.

### III.     JURISDICTION AND VENUE

14.     Nokia admits that the Complaint purports to bring an action for patent

infringement arising under the patent laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285, but denies that Plaintiff is entitled to any relief whatsoever.

15.     Nokia does not dispute that this Court has subject matter jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a) but denies that Plaintiff is entitled to any relief whatsoever. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 15.

16.     Nokia does not dispute that this Court has personal jurisdiction over Nokia for purposes of this particular action only, but denies that Nokia has committed any acts that infringe any claim of the Asserted Patents in this judicial district or any other district in the United States. Nokia admits that NoAC has transacted business in Texas and that NoAC is registered to do business in the State of Texas. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 16.

17.     Nokia does not dispute that venue in this district is proper with respect to NoAC under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) for purposes of this particular action only, but denies that Nokia has committed any acts that infringe any claim of the Asserted Patents in this judicial district or any other district in the United States. Nokia admits that NoAC is registered to do business in the State of Texas, has offices in the State of Texas, and has transacted business in the Eastern District of Texas, but denies that NoAC has committed any acts of infringement in this district or any district in the United States. Nokia admits that NoAC has operated a facility in Plano, Texas. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 17.

18.     Nokia does not dispute that venue is proper as to Nokia Corp. under 28 U.S.C. § 1391(c)(3) for purposes of this particular action only. Except as expressly admitted, Nokia

denies any remaining allegations of paragraph 18.

19.    Nokia does not dispute that venue is proper as to Nokia Solutions and Networks Oy under 28 U.S.C. § 1391(c)(3) for purposes of this particular action only. Except as expressly admitted, Nokia denies any remaining allegations of paragraph 19.

## IV.    COUNTS OF [ALLEGED] PATENT INFRINGEMENT

20.    Denied.

### COUNT ONE
### [ALLEGED] INFRINGEMENT OF U.S. PATENT 6,876,669

21.    Nokia incorporates by reference its responses to all preceding paragraphs as if fully repeated and restated herein.

22.    Nokia admits that information on the face of the '669 Patent, attached to the Complaint as Exhibit A, states that it is titled "PACKET FRAGMENTATION WITH NESTED INTERRUPTIONS" and was filed on January 8, 2001, and issued on April 5, 2005.

23.    Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 23 and therefore denies them.

24.    Nokia does not dispute that on May 19, 2021, IPR2021-00984 was filed on the '669 Patent challenging claims 1 – 27.  Nokia does not dispute that on November 19, 2021, the Patent Trial and Appeal Board ("PTAB") denied institution of IPR2021-00984.

**[Alleged] Technical Description**

25.    Nokia admits the '669 Patent includes the quotes, "cannot stop until the entire packet has been sent" and "once the transmitter has begun sending fragments of a given packet." Nokia denies that the '669 Patent includes the quote "Thus, the only way that a high-priority packet can be "assured immediate transmission is by discarding any low-priority packets whose transmission is in progress." Nokia lacks knowledge or information sufficient to admit or deny

the remaining allegations of paragraph 25 and therefore denies them.

26.     Nokia admits the '669 Patent includes the quotes, "multi-priority approach," "allows the transmitter to stop sending the low-priority packet in the middle, and then to complete the transmission after high-priority requirements have been serviced," "nested," and "without compromising the ability of the receiver to reassemble all of the packets." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 26 and therefore denies them.

**[Alleged] Direct Infringement**

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Nokia admits that paragraph 31 includes excerpts from: https://resources.nokia.com/asset/164728?_ga=2.188290280.1557979830.1638603790-478191956.1631863234. To the extent the allegations of paragraph 31 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 31 and therefore denies them.

32.     Nokia admits that paragraph 32 includes excerpts from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 32 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 32 and therefore denies them.

33.     Nokia     admits     that     paragraph     33     includes     excerpts     from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 33 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 33 and therefore denies them.

34.     Nokia     admits     that     paragraph     34     includes     excerpts     from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 34 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 34 and therefore denies them.

35.     Nokia     admits     that     paragraph     35     includes     excerpts     from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 35 purport to characterize the contents of

certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 35 and therefore denies them.

36. Nokia admits that paragraph 36 includes excerpts from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 36 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 36 and therefore denies them.

37. Nokia admits that paragraph 37 includes excerpts from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 37 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 37 and therefore denies them.

**[Alleged] Willful Infringement**

38. Denied.

39. Denied.

40. Denied.

41. Denied.

**[Alleged] Indirect Infringement**

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Nokia   admits   that   paragraph   48   includes   excerpts   from: https://resources.nokia.com/asset/164728?_ga=2.188290280.1557979830.1638603790-478191956.1631863234. To the extent the allegations of paragraph 48 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 48 and therefore denies them.

49.    Nokia   admits   that   paragraph   49   includes   excerpts   from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%20and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 49 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 49 and therefore denies them.

50.    Nokia   admits   that   paragraph   50   includes   excerpts   from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%2

0and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.

10.R1.pdf. To the extent the allegations of paragraph 50 purport to characterize the contents of

certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 50 and

therefore denies them.

51.     Nokia     admits     that     paragraph     51     includes     excerpts     from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%2

0and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.

10.R1.pdf. To the extent the allegations of paragraph 51 purport to characterize the contents of

certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 51 and

therefore denies them.

52.     Nokia     admits     that     paragraph     52     includes     excerpts     from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%2

0and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.

10.R1.pdf. To the extent the allegations of paragraph 52 purport to characterize the contents of

certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 52 and

therefore denies them.

53.     Nokia     admits     that     paragraph     53     includes     excerpts     from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%2

0and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.

10.R1.pdf. To the extent the allegations of paragraph 53 purport to characterize the contents of

certain documents, including websites, the document speaks for itself.  Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 53 and

therefore denies them.

54.    Nokia    admits    that    paragraph    54    includes    excerpts    from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/3HE17164AAADTQZZA01_V1_7450%20ESS%207750%20SR%2

0and%20VSR%20Triple%20Play%20Service%20Delivery%20Architecture%20Guide%2021.

10.R1.pdf. To the extent the allegations of paragraph 54 purport to characterize the contents of

certain documents, including websites, the document speaks for itself.  Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 54 and

therefore denies them.

55.    Denied.

## COUNT TWO
## [ALLEGED] INFRINGEMENT OF U.S. PATENT 7,127,523

56.    Nokia incorporates by reference its responses to all preceding paragraphs as if

fully repeated and restated herein.

57.    Nokia admits that information on the face of the '523 Patent, attached to the

Complaint as Exhibit B, states that it is titled "SPANNING TREE PROTOCOL TRAFFIC IN

A TRANSPARENT LAN" and was filed on January 25, 2002, and issued on October 24, 2006.

58.    Nokia lacks knowledge or information sufficient to admit or deny the allegations

of paragraph 58 and therefore denies them.

59.     Nokia does not dispute that on February 22, 2021, IPR2021-00571 was filed on the '523 Patent, but denies that the claims challenged in IPR2021-00571 were limited to claims 1-6 and 10-15.  Nokia admits that on August 30, 2021, the Patent Trial and Appeal Board ("PTAB") denied institution of IPR2021-00571.

60.     Nokia does not dispute that on March 17, 2022, a Request for Ex Parte Reexamination was filed on the '523 Patent requesting reexamination of claims 1-6, 10-15, and 19. Nokia admits that on August 3, 2022, the USPTO confirmed claims 1-6, 10-15, and 19 and terminated the Reexam.

**[Alleged] Technical Description**

61.     Nokia admits the '523 Patent includes the quotes "costly and difficult to maintain," "security and reliability drawbacks," "excessively complex to configure," and "separation of provider and user domains." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 61 and therefore denies them.

62.     Nokia admits the '523 Patent includes the quote "for preventing loops in a TLS network" but denies that the '523 Patent includes the quotes "STP [spanning tree protocol] frames are sent through the same tunnels as the user traffic, but are distinguished from the user data frames by a special STP label. Loop removal is carried out in this way for each one of the TLSs, so that each TLS has its own loop-free topology. Using this method, the TLS network operator is able to ensure that there are no loops in the core network, irrespective of loops that users b add when they connect their own equipment to the network." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 62 and therefore denies them.

**[Alleged] Direct Infringement**

63.     Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Nokia   admits   that   paragraph   67   includes   excerpts   from: https://onestore.nokia.com/asset/164728?_ga=2.188290280.1557979830.1638603790-478191956.1631863234. To the extent the allegations of paragraph 67 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 67 and therefore denies them.

68.    Nokia   admits   that   paragraph   68   includes   excerpts   from: https://onestore.nokia.com/asset/157673?_ga=2.111614212.1016918459.1649964251-16661628.1649964251. To the extent the allegations of paragraph 68 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 68 and therefore denies them.

69.    Nokia   admits   that   paragraph   69   includes   an   excerpt   from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17148AAADTQZZA01_V1_7450%20ESS%207750%20SR%207950%20XRS%20and%20VSR%20Layer%202%20Services%20and%20EVPN%20Guide: %20VLL%20VPLS%20PBB%20and%20EVPN%2021.10.R1.pdf. To the extent the allegations of paragraph 69 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 69 and therefore denies them.

**[Alleged] Willful Infringement**

70.     Nokia admits that it received a letter from counsel for Orckit IP, LLC dated February 17, 2017, but denies that the letter identified the '523 Patent and further denies that the letter provided Nokia notice of infringement of the '523 Patent. Except as expressly admitted, denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

**[Alleged] Indirect Infringement**

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Nokia admits that paragraph 81 includes excerpts from https://onestore.nokia.com/asset/164728?_ga=2.188290280.1557979830.1638603790-478191956.1631863234, but denies that paragraph 81 includes excerpts from https://www.nokia.com/networks/products/7750-service-router/. To the extent the allegations of paragraph 81 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 81 and therefore denies them.

82.     Nokia     admits     that     paragraph     82     includes     excerpts     from:

https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17148AAADTQZZA01_V1_7450%20ESS%207750%20SR%207950%20XRS%20and%20VSR%20Layer%202%20Services%20and%20EVPN%20Guide:%20VLL%20VPLS%20PBB%20and%20EVPN%2021.10.R1.pdf. To the extent the allegations of paragraph 82 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 82 and therefore denies them.

83.     Nokia    admits    that    paragraph    83    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17148AAADTQZZA01_V1_7450%20ESS%207750%20SR%207950%20XRS%20and%20VSR%20Layer%202%20Services%20and%20EVPN%20Guide:%20VLL%20VPLS%20PBB%20and%20EVPN%2021.10.R1.pdf                         and https://documentation.nokia.com/html/0_add-h-f/93-0076-10-01/7750_SR_OS_Services_Guide/Service-VPLS-CLI.pdf. To the extent the allegations of paragraph 83 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 83 and therefore denies them.

84.     Nokia    admits    that    paragraph    84    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17148AAADTQZZA01_V1_7450%20ESS%207750%20SR%207950%20XRS%20and%20VSR%20Layer%202%20Services%20and%20EVPN%20Guide:%20VLL%20VPLS%20PBB%20and%20EVPN%2021.10.R1.pdf. To the extent the allegations of paragraph 84 purport to characterize the contents of certain documents, including websites,

the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 84 and therefore denies them.

85.     Denied.

## COUNT THREE
## [ALLEGED] INFRINGEMENT OF U.S. PATENT 7,283,465

86.     Nokia incorporates by reference its responses to all preceding paragraphs as if fully repeated and restated herein.

87.     Nokia admits that information on the face of the '465 Patent, attached to the Complaint as Exhibit C, states that it is titled "HIERARCHICAL VIRTUAL PRIVATE LAN SERVICE PROTECTION SCHEME," was filed on January 7, 2003, and issued on October 16, 2007.

88.     Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 88 and therefore denies them.

**[Alleged] Technical Description**

89.     Nokia denies that the '465 Patent includes the quotes "backup point-to-point PWs between each edge node and an additional core node. The backup PW connection is in addition to the standard PW connection already existing between the edge node and another code node. Thus, if a VC between an edge node and a core node fails, a backup 'protection path' through another core node can be used to provide access between the edge node and the rest of the network," and "long period[s] of traffic outage if a virtual connection fails between an edge node and a core node, or if a code node fails. In most cases, initiation of failure protection depends on MAC address aging and learning schemes, which are inherently slow." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 89 and therefore denies them.

90.    Nokia admits the '465 Patent includes the quotes "seeks to provide improved mechanisms for protection from failure in virtual private networks (VPNs)," but denies that the '465 Patent includes the quote "if the "primary core node fails, the remaining nodes in the network simply redirect all connections from the failed primary core node to the corresponding standby core node. Since the standby core node has the same topology as the failed primary core node, the remaining nodes in the network do not need to re-learn MAC table addresses, and are thus able to recover quickly from the failure. In addition, there is no need to clear the MAC tables, so that packet flooding is reduced significantly." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 90 and therefore denies them.

**[Alleged] Direct Infringement**

91.    Denied.

92.    Denied.

93.    Denied.

94.    Denied.

95.    Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 95 and therefore denies them.

96.    Nokia    admits    that    paragraph    96    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 96 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 96 and therefore denies them.

97.    Nokia    admits    paragraph    97    includes    excerpts    from:

17

https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 97 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 97 and therefore denies them.

98.     Nokia     admits     that     paragraph     98     includes     excerpts     from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 98 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 98 and therefore denies them.

99.     Nokia     admits     that     paragraph     99     includes     excerpts     from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE16308AAAATQZZA01_V1_7705%20SAR%20Services%20Guide%2020.4.R1.pdf                    and                    https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 99 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 99 and therefore denies them.

100.     Nokia     admits     that     paragraph     100     includes     excerpts     from:

https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 100 purport to characterize the contents of certain documents, including websites, the document speaks for itself.   Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 100 and therefore denies them.

**[Alleged] Willful Infringement**

101.   Denied.

102.   Denied.

103.   Denied.

104.   Denied.

**[Alleged] Indirect Infringement**

105.   Denied.

106.   Denied.

107.   Denied.

108.   Denied.

109.   Denied.

110.   Denied.

111.   Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 111 and therefore denies them.

112.   Nokia   admits   paragraph   112   includes   excerpts   from:
https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 112

19

purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 112 and therefore denies them.

113.    Nokia    admits    that    paragraph    113    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 113 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 113 and therefore denies them.

114.    Nokia    admits    that    paragraph    114    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 114 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 114 and therefore denies them.

115.    Nokia    admits    that    paragraph    115    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE16308AAAATQZZA01_V1_7705%20SAR%20Services%20Guide%2020.4.R1.pdf                    and                https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 115

purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 115 and therefore denies them.

116.    Nokia    admits    that    paragraph    116    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/3HE17547AAABTQZZA01_V1_7705%20SAR%20Basic%20System%20Configuration%20Guide%2021.10.R1.pdf. To the extent the allegations of paragraph 116 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 116 and therefore denies them.

117.    Denied.

## COUNT FOUR
## [ALLEGED] INFRINGEMENT OF U.S. PATENT 7,768,928

118.    Nokia incorporates by reference its responses to all preceding paragraphs as if fully repeated and restated herein.

119.    Nokia admits that information on the face of the '928 Patent, attached to the Complaint as Exhibit D, states that it is titled "CONNECTIVITY FAULT MANAGEMENT (CFM) IN NETWORKS WITH LINK AGGREGATION GROUP CONNECTIONS," was filed on July 11, 2006, and issued on August 3, 2010.

120.    Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 120 and therefore denies them.

121.    Nokia does not dispute that on April 16, 2021, IPR2021-00814 was filed on the '928 Patent challenging claims 1–3, 6, 7, 9–15, 18–24, 26, 27, and 30–32. Nokia does not dispute that on October 22, 2021, the Patent Trial and Appeal Board ("PTAB") denied institution of

IPR2021-00814.

**[Alleged] Technical Description**

122.    Nokia admits the '928 Patent includes the quotes, "cannot detect certain malfunctions," "[w]hen a certain network such as a local area network (LAN) or a virtual-LAN (V-LAN) employs LAG interfaces, some of the connectivity fault management functions as currently specified by the IEEE 802.1ag Standard and ITU-T Recommendation Y.1731 cannot be utilized," but denies that the '928 Patent includes the quote "the path of each packet cannot be predicted by the originating ME that initiates the CFM function. This could affect the reception of reply messages and performance results such as frame delay variation." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 122 and therefore denies them.

123.    Nokia admits the '928 Patent includes the quotes, "a system for implementing fault management functions in networks with LAG connections which are devoid of the above limitations," "maintenance entity operable in an Ethernet Connectivity Fault Management (CFM) domain. The maintenance entity comprises a port definer module and a connection configured to be connected to a group of aggregated links. The port definer module is configured to examine a designated link of the group by forwarding at least one CFM message via the designated link," and "[t]he port definer module is configured for allowing the separate examination of a designated link of the group of LAG members. The examination is done by facilitating the forwarding of CFM messages via the probed designated link." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 123 and therefore denies them.

**[Alleged] Direct Infringement**

124.    Denied.

125.   Denied.

126.   Denied.

127.   Denied.

128.   Nokia admits that paragraph 128 purports to include excerpts from: https://onestore.nokia.com/asset/164727. To the extent the allegations of paragraph 128 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 128 and therefore denies them.

129.   Nokia admits paragraph 129 includes excerpts from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%2012.0.R4.pdf. To the extent the allegations of paragraph 129 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 129 and therefore denies them.

130.   Nokia admits that paragraph 130 includes excerpts from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%2012.0.R4.pdf. To the extent the allegations of paragraph 130 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 130 and therefore denies them.

131.   Nokia admits that paragraph 131 includes excerpts from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%201

2.0.R4.pdf. To the extent the allegations of paragraph 131 purport to characterize the contents

of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 131 and

therefore denies them.

**[Alleged] Willful Infringement**

132.    Nokia admits that it received a letter from counsel for Orckit IP, LLC dated

February 17, 2017, but denies that the letter identified the '928 Patent and further denies that the

letter provided Nokia notice of infringement of the '928 Patent. Except as expressly admitted,

denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

**[Alleged] Indirect Infringement**

137.    Denied.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Nokia    admits    that    paragraph    143    includes    excerpts    from:

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%201 2.0.R4.pdf, but denies that paragraph 143 includes excerpts from https://www.nokia.com/networks/products/7450-ethernet-service-switch/.   To the extent the allegations of paragraph 143 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 143 and therefore denies them.

144.   Nokia admits paragraph 144 includes excerpts from: https://documentation.nokia.com/cgi- bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%201 2.0.R4.pdf. To the extent the allegations of paragraph 144 purport to characterize the contents of certain documents, including websites, the document speaks for itself.   Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 144 and therefore denies them.

145.   Nokia admits that paragraph 145 includes excerpts from: https://documentation.nokia.com/cgi- bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%201 2.0.R4.pdf. To the extent the allegations of paragraph 145 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 145 and therefore denies them.

146.   Nokia admits that paragraph 146 includes excerpts from: https://documentation.nokia.com/cgi- bin/dbaccessfilename.cgi/9301071102_V1_7450%20ESS%20OS%20Services%20Guide%201

2.0.R4.pdf. To the extent the allegations of paragraph 146 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 146 and therefore denies them.

147.   Denied.

## COUNT FIVE
## [ALLEGED] INFRINGEMENT OF U.S. PATENT 7,983,150

148.   Nokia incorporates by reference its responses to all preceding paragraphs as if fully repeated and restated herein.

149.   Nokia admits that information on the face of the '150 Patent, attached to the Complaint as Exhibit E, states that it is titled "VPLS FAILURE PROTECTION IN RING NETWORKS," was filed on January 18, 2006, and issued on July 19, 2011.

150.   Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 150 and therefore denies them.

151.   Nokia does not dispute that on January 26, 2021, IPR2021-00469 was filed on the '150 Patent challenging claims 1–5, 8–15, and 18–20. Nokia does not dispute that on August 8, 2022, the Patent Trial and Appeal Board ("PTAB") in a final written decision upheld the patentability of claims 1–5, 8–15, and 18–20.

**[Alleged] Technical Description**

152.   Nokia admits the '150 Patent includes the quote, "do not adequately protect against all failure scenarios that may occur in a VPLS that is provisioned over the ring." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 152 and therefore denies them.

153.   Nokia admits the '150 Patent includes the quote, "failure protection mechanisms

26

that can respond to and overcome these sorts of VPLS failure scenarios quickly and efficiently." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 153 and therefore denies them.

154.    Nokia admits the '150 Patent includes the quote, "[e]ach CTP connects the respective node to a network external to the ring network. In the absence of a network failure, these standby CTPs are blocked. When a failure occurs, the nodes in the ring network exchange topology messages and inform one another of the failure. Based on these messages, the nodes may determine that the VPLS has been segmented. In this case, the nodes choose one or more of the standby CTPs to be activated in order to overcome the segmentation." Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 154 and therefore denies them.

**[Alleged] Direct Infringement**

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.

159.    Nokia    admits    that    paragraph    159    includes    excerpts    from: https://documentation.nokia.com/html/0_add-h-f/93-0267-

HTML/7X50_Advanced_Configuration_Guide/G8032-MultiRing.pdf                     and

https://documentation.nokia.com/cgi-

bin/dbaccessfilename.cgi/9301070804_V1_7450%20ESS%20OS%20Services%20Guide%209

.0R4.pdf. To the extent the allegations of paragraph 159 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 159 and

therefore denies them.

160.   Nokia admits paragraph 160 includes excerpts from: https://documentation.nokia.com/html/0_add-h-f/93-0267-HTML/7X50_Advanced_Configuration_Guide/G8032-MultiRing.pdf.   To the extent the allegations of paragraph 160 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 160 and therefore denies them.

161.   Nokia admits that paragraph 161 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en.   To the extent the allegations of paragraph 161 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 161 and therefore denies them.

162.   Nokia admits that paragraph 162 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en.   To the extent the allegations of paragraph 162 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 162 and therefore denies them.

163.   Nokia admits that paragraph 163 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en.   To the extent the allegations of paragraph 163 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 163 and therefore denies them.

164.   Nokia admits that paragraph 164 purports to include excerpts from:

https://www.itu.int/rec/T-REC-G.8032/en.  To the extent the allegations of paragraph 164 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 164 and therefore denies them.

**[Alleged] Willful Infringement**

165.    Nokia admits that it received a letter from counsel for Orckit IP, LLC dated February 17, 2017, but denies that the letter identified the '150 Patent and further denies that the letter provided Nokia notice of infringement of the '150 Patent. Except as expressly admitted, denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

**[Alleged] Indirect Infringement**

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Nokia    admits    that    paragraph    175    includes    excerpts    from: https://documentation.nokia.com/cgi-bin/dbaccessfilename.cgi/9301070804_V1_7450%20ESS%20OS%20Services%20Guide%209.0R4.pdf.  To the extent the allegations of paragraph 175 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge

or information sufficient to admit or deny the remaining allegations of paragraph 175 and therefore denies them.

176.     Nokia      admits      paragraph      176      includes      excerpts      from: https://documentation.nokia.com/html/0_add-h-f/93-0267-

HTML/7X50_Advanced_Configuration_Guide/G8032-MultiRing.pdf.   To   the   extent   the allegations of paragraph 176 purport to characterize the contents of certain documents, including websites, the document speaks for itself.  Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 176 and therefore denies them.

177.   Nokia admits that paragraph 177 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en.  To the extent the allegations of paragraph 177 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 177 and therefore denies them.

178.   Nokia admits that paragraph 178 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en.  To the extent the allegations of paragraph 178 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 178 and therefore denies them.

179.   Nokia admits that paragraph 179 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en and ITU recommendation ITU-T G.806. To the extent the allegations of paragraph 179 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 179 and therefore denies them.

180.    Nokia admits that paragraph 180 purports to include excerpts from: https://www.itu.int/rec/T-REC-G.8032/en. To the extent the allegations of paragraph 180 purport to characterize the contents of certain documents, including websites, the document speaks for itself. Nokia lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 180 and therefore denies them.

181.    Denied.

## V.    [ALLEGED] NOTICE

182.    Nokia lacks knowledge or information sufficient to admit or deny the allegations of paragraph 182 and therefore denies them.

## VI.    ANSWER TO THE JURY DEMAND

183.    This paragraph sets forth Plaintiff's demand for a trial by jury on all issues so triable to which no response is required.

## VII.    [PLAINTIFF'S] PRAYER FOR RELIEF

To the extent any response is required to any paragraph of Plaintiff's Prayer for Relief, Nokia denies that Plaintiff is entitled to any of the requested relief and denies any allegations of its Prayer for Relief. Nokia further denies each and every allegation in the Complaint to which it has not specifically responded.

## JURY TRIAL DEMAND

Nokia respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## NOKIA'S AFFIRMATIVE DEFENSES

Upon information and belief, and subject to its responses above, Nokia alleges and asserts the following defenses in response to the allegations of the Complaint, without admitting or acknowledging that Nokia bears the burden of proof as to any of them or that any must be pleaded

as defenses. Regardless of how such defenses are listed herein, Nokia undertakes the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law. Nokia expressly reserves the right to amend or raise additional defenses pursuant to any docket control order or as additional information becomes available through further investigation and discovery.

Nokia incorporates by reference the factual background recited *infra* in paragraphs 1 to 183.

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

Nokia does not infringe and has not infringed any of the Asserted Patents directly, indirectly, literally, under the doctrine of equivalents, or in any other manner, and is not liable for infringement of any valid and enforceable claim of any of the Asserted Patents.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

The claims of the Asserted Patents are invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, 112, and/or 116. For example, each claim is invalid as claiming concepts already known to the public at the time of the alleged invention. Prior art that invalidates the claims of the Asserted Patents will be set forth in Nokia's invalidity contentions, amendments, and proposed amendments thereto.

## THIRD AFFIRMATIVE DEFENSE

### (Statutory Limit on Damages)

Plaintiff's claim for damages, equitable relief, and/or costs is statutorily limited by 35U.S.C. §§ 286, 287, and/or 288.  For example, Plaintiff is barred by 35 U.S.C. § 287 from

recovering damages in this case due to Plaintiff's, Plaintiff's licensees', or Plaintiff's predecessors in interest's failure to mark.

## FOURTH AFFIRMATIVE DEFENSE

### (No Willful Infringement)

Plaintiff is not entitled to enhanced or increased damages for willful infringement, under 35 U.S.C. § 284 or otherwise, because Plaintiff has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement. Plaintiff has failed to state a claim for willful infringement for failing to identify any pre-suit factual basis that Nokia had actual knowledge of or was willfully blind to the Asserted Patent or Nokia's alleged infringement.

## FIFTH AFFIRMATIVE DEFENSE

### (No Exceptional Case)

Plaintiff cannot prove that this is an exceptional case justifying award of attorney fees against Nokia pursuant to 35 U.S.C. § 285.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Acquiescence, Unclean Hands)

Plaintiff's claims are barred, in whole or in part, or their remedies limited, by the doctrines of waiver, implied waiver, estoppel, acquiescence, and/or unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

Plaintiff's claims for relief are barred in whole or in part by prosecution history estoppel and/or prosecution history disclaimer based on amendments, statements, admissions, omissions, representations, disclaimers, and/or disavowals made by the applications for the Asserted Patents.

## EIGHTH AFFIRMATIVE DEFENSE

**(No Injunctive Relief)**

Plaintiff's claims for relief are barred in whole or in part because Plaintiff is not entitled to injunctive relief. Any alleged injury to Plaintiff is not immediate or irreparable and Plaintiff has an adequate remedy at law.

## ELEVENTH AFFIRMATIVE DEFENSE

**(Statutory Limitation)**

To the extent certain equipment accused of infringing the Asserted Patents are used by and/or manufactured for the United States Government, Plaintiff's claims involving Nokia with respect to such equipment may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## TWELFTH AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

Plaintiff's Complaint fails to state facts sufficient to constitute a claim upon which relief can be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE

**(Acts of Others)**

The claims made in the Complaint are barred, in whole or in part, because Nokia is not liable for the acts of others over whom it has no control.

## FOURTEENTH AFFIRMATIVE DEFENSE

**(No Causation)**

Plaintiff's claims against Nokia are barred because Plaintiff's damages, if any, were not caused by Nokia.

## FIFTEENTH AFFIRMATIVE DEFENSE

**(License, Implied License, Exhaustion)**

Plaintiff's claims for patent infringement are precluded in whole or in part (i) to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to Nokia by any entity or entities having express or implied licenses or covenant not to sue or assert to the Asserted Patents and/or (ii) under the doctrine of patent exhaustion.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

Plaintiff's claims are barred, in whole or in part, by the defense of patent misuse.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses)

Nokia reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses at law or in equity that may exist now or that may be available in the future, including (but not limited to) those related to the unenforceability of any claim of the Asserted Patents based on inequitable conduct, based on discovery and further factual investigation in this action. Assertion of a defense is not a concession that Nokia has the burden of proving the matter asserted.

## NOAC'S COUNTERCLAIMS

Without admitting any of the allegations of the Complaint other than those expressly admitted herein, and without prejudice to the right to plead any additional counterclaims as the facts of the matter warrant, pursuant to Rule 13 of the Federal Rules of Civil Procedure, Nokia of America Corporation ("NoAC") asserts the following Counterclaims against Plaintiff Correct Transmission, LLC ("Plaintiff" or "Correct Transmission"):

### I.      THE PARTIES

1.      NoAC is a Delaware corporation with a principal place of business at 600-700

Mountain Avenue, Murray Hill, NJ 07974.

2.      Upon information and belief, and based on Correct Transmission's allegations in its Complaint, Correct Transmission is a limited liability company organized and existing under the law of the State of Delaware, with its principal place of business located at 825 Watter's Creek Boulevard, Building M, Suite 250, Allen, TX 75013.

## II.      JURISDICTION AND VENUE

3.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under at least 25 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, and 2201-02.

4.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

5.      This Court has personal jurisdiction over Correct Transmission, as Correct Transmission consented to personal jurisdiction by commencing this action for patent infringement in this judicial district.

6.      Correct Transmission has consented to venue in this Court by bringing this action against NoAC, and thus venue for NoAC's counterclaims is proper in this district, although a different venue may be more convenient.

7.      Correct Transmission has filed suit in this Court against NoAC for alleged infringement of one of more claims of each of the Asserted Patents in this action. Accordingly, there is an actual, continuing, and justiciable controversy arising under the Patent Act, 35 U.S.C. §§ 1, *et. seq.* between Correct Transmission, on the one hand, and NoAC, on the other, concerning the alleged infringement by NoAC of the Asserted Patents.

8.      NoAC denies that it directly or indirectly infringes any valid and enforceable claim of the Asserted Patents. In view of the foregoing, there exists an actual and justiciable

controversy between the parties with respect to the alleged infringement of the Asserted Patents.

## III.     COUNTERCLAIMS

### FIRST COUNTERCLAIM – DECLARATION OF NON-INFRINGEMENT (U.S. PATENT NO. 6,876,669)

9.      NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

10.      Correct Transmission alleges that NoAC has infringed and continues to infringe at least claim 1 of the '669 Patent under 35 U.S.C. § 271(a).

11.      NoAC denies that it infringes any valid claim of the '669 Patent.

12.      NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '669 Patent, including but not limited to claim 1, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes or practices, the following exemplary limitations: "receiving a first datagram for transmission at a first priority; receiving a second datagram for transmission at a second priority, higher than the first priority, before the transmission of the first datagram is completed; responsive to receiving the second datagram, deciding to divide the first datagram into a plurality of fragments, including a first fragment and a last fragment; transmitting the fragments of the first datagram over the channel, beginning with the first fragment; and transmitting at least a fragment of the second datagram over the channel before transmitting the last fragment of the first datagram, wherein transmitting at least the fragment of the second datagram comprises interrupting transmission of a number of datagrams, including at least the first datagram, in order to transmit at least the fragment of the second datagram, and adding a field to the fragment indicating the number of datagrams whose transmission has been interrupted."

13.     For these, and other reasons to be established through discovery, NoAC denies that it infringes any valid claim of the '669 Patent.

14.     There is an actual and justiciable controversy between Correct Transmission and NoAC arising under the Patent Act, 35 U.S.C. §§ 1, *et. seq.*, concerning Correct Transmission's allegations that NoAC infringes the '669 Patent.

15.     NoAC is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any valid, enforceable claim of the '669 Patent.

16.     Absent a declaration that NoAC does not infringe the '669 Patent, Correct Transmission will continue to wrongfully assert the '669 Patent against NoAC and thereby cause NoAC irreparable harm and injury.

## SECOND COUNTERCLAIM – DECLARATION OF NON-INFRINGEMENT (U.S. PATENT NO. 7,127,523)

17.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

18.     Correct Transmission alleges that NoAC has infringed and continues to infringe at least claims 1 and 10 of the '523 Patent under 35 U.S.C. § 271(a).

19.     NoAC denies that it infringes any valid claim of the '523 Patent.

20.     NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '523 Patent, including but not limited to claim 1, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes or practices the following exemplary limitations: "defining a topology of a transparent local area network service (TLS), comprising a system of label-switched tunnels between label-switched routers (LSRs) through a communication network, the TLS having at

least first and second endpoints to which first and second user equipment is connected so that the TLS acts as a virtual bridge between the first and second user equipment"; "transmitting control frames among the LSRs in the TLS via the label-switched tunnels, each control frame comprising a control traffic label and a bridge protocol data (BPDU) in accordance with a spanning tree protocol (STP), the control traffic label indicating to the LSRs that the STP is to be executed by the LSRs without transmission of the BPDU to the user equipment;" and "upon receiving the control frames at the LSRs, processing the BPDU, responsively to the control traffic label, so as to remove loops in the topology of the TLS irrespective of the user equipment."

21.     As an additional example, NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '523 Patent, including but not limited to claim 10, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes the following exemplary limitations: "A communication device for operation as one of a plurality of label-switched routers (LSRs) in a transparent local area network service (TLS), which includes a system of label-switched tunnels between the label-switched routers (LSRs) through a communication network"; "the TLS having at least first and second endpoints to which first and second user equipment is connected so that the TLS acts as a virtual bridge between the first and second user equipment"; "the device comprising: one or more ports, adapted to send and receive traffic via the label-switched tunnels"; "and a traffic processor which is coupled to the one or more ports, and is adapted to transmit control frames to the LSRs in the TLS via the label-switched tunnels"; "each control frame comprising a control traffic label and a bridge protocol data unit (BPDU) in accordance with a spanning tree protocol (STP)"; "the control traffic label indicating to the LSRs that the

STP is to be executed by the LSRs without transmission of the BODU to the user equipment";
and "wherein the traffic processor is further adapted, upon receiving the control frames, to
process the BPDU, responsively to the control traffic label, so as to remove loops in a topology
of the TLS irrespective of the use equipment."

22.     For this, and other reasons to be established through discovery, NoAC denies that
it infringes any valid claim of the '523 Patent.

23.     There is an actual and justiciable controversy between Correct Transmission and
NoAC arising under the Patent Act, 35 U.S.C. §§ 1, *et. seq.*, concerning Correct Transmission's
allegations that NoAC infringes the '523 Patent.

24.     NoAC is entitled to a judicial declaration that it has not and does not infringe
directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents,
any valid, enforceable claim of the '523 Patent.

25.     Absent a declaration that NoAC does not infringe the '523 Patent, Correct
Transmission will continue to wrongfully assert the '523 Patent against NoAC and thereby cause
NoAC irreparable harm and injury.

### THIRD COUNTERCLAIM – DECLARATION OF NON-INFRINGEMENT
### (U.S. PATENT NO. 7,283,465)

26.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all
preceding paragraphs above.

27.     Correct Transmission alleges that NoAC has infringed and continues to infringe
at least claims 1 and 16 of the '465 Patent.

28.     NoAC denies that it infringes any valid claim of the '465 Patent.

29.     NoAC does not make, use, sell, or offer to sell any product, platform, or service
that practices every element of any claim of the '465 Patent, including but not limited to claim

1, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes or performs the following exemplary limitations: "[a] data communication network, comprising: a plurality of primary virtual bridges, interconnected by primary virtual connections so as to transmit and receive data packets over the network to and from edge devices connected thereto"; "a plurality of backup virtual bridges, each such backup virtual bridge being paired with a corresponding one of the primary virtual bridges and connected by secondary virtual connections to the other primary virtual bridges"; "wherein the primary virtual connections define a respective primary topology image for each of the primary virtual bridges, and wherein each of the backup virtual bridges is connected to the other primary virtual bridged by secondary virtual connections that are identical to the primary virtual connections of the corresponding one of the primary virtual bridges, thus defining a respective secondary topology image that is identical to the respective primary topology image of the corresponding one of the primary virtual bridges"; "wherein each of the primary and backup virtual bridges is adapted to maintain a respective forwarding table, and to forward the data packets in accordance with entries in the respective forwarding table, and wherein each of the backup virtual bridges is adapted to periodically synchronize its forwarding table by copying contents of the forwarding table of the corresponding one of the primary virtual bridges with which it was paired"; "whereby upon a failure of the corresponding one of the primary virtual bridges, each of the backup virtual bridge forwards and receives the data packets over the network via the secondary virtual connections, in accordance with the synchronized forwarding table, in place of the corresponding one of the primary virtual bridges."

30.     As an additional example, NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '465 Patent,

including but not limited to claim 16, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes or practices the following exemplary limitations: "interconnecting a plurality of primary virtual bridges using primary virtual connections through a network, wherein the primary virtual connections define a respective primary topology image for each of the primary virtual bridges"; "linking the primary virtual bridges to edge devices, so as to enable the edge devices to transmit and receive data packets over the network via the primary virtual connections"; "associating a plurality of backup virtual bridge with the plurality of the primary virtual bridges, such that each of the backup virtual bridges is paired with a corresponding one of the primary virtual bridges"; "configuring secondary virtual connections between the backup virtual bridges and the primary virtual bridges such that each of the backup virtual bridges is connected to the other primary virtual bridges by secondary virtual connections that are identical to the primary virtual connections of the corresponding one of the primary virtual bridges, thus defining a respective secondary topology image that is identical to the respective primary topology image of the corresponding one of the primary virtual bridges"; "maintaining a respective forwarding table in each of the primary and backup virtual bridges, wherein each of the backup virtual bridges is adapted to periodically update its forwarding table by copying contents of the forwarding table of the corresponding one of the primary virtual bridges with which it is paired"; and "upon a failure of the corresponding one of the primary virtual bridges, in accordance with the synchronized forwarding table."

31.    For this, and other reasons to be established through discovery, NoAC denies that it infringes any valid claim of the '465 Patent.

32.    There is an actual and justiciable controversy between Correct Transmission and NoAC arising under the Patent Act, 35 U.S.C. §§ 1, et. seq., concerning Correct Transmission's

allegations that NoAC infringes the '465 Patent.

33.    NoAC is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any valid, enforceable claim of the '465 Patent.

34.    Absent a declaration that NoAC does not infringe the '465 Patent, Correct Transmission will continue to wrongfully assert the '465 Patent against NoAC and thereby cause NoAC irreparable harm and injury.

### FOURTH COUNTERCLAIM – DECLARATION OF NON-INFRINGEMENT (U.S. PATENT NO. 7,768,928)

35.    NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

36.    Correct Transmission alleges that NoAC has infringed and continues to infringe at least claims 14 and 22 of the '928 Patent.

37.    NoAC denies that it infringes any valid claim of the '928 Patent.

38.    NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '928 Patent, including but not limited to claim 14, at least because NoAC does not make, use, sell, or offer to sell any product, system, platform, or service includes or practices the following exemplary limitations: "A system for using Connectivity Fault Management (CFM) functions to examine aggregated link connections, said system comprising: a plurality of maintenance entities connected to a CFM domain, each one of said maintenance entities comprising a port definer module"; "at least one group of aggregated physical links comprising a single logical link, configured for connecting a first and a second of said plurality of maintenance entities"; "the port definer module of said first maintenance entity being configured to designate any physical link as required of said single logical link, and

examine said designated link of said single logical link by forwarding at least one CFM messages to said second maintenance entity via said logical link in such a way that said CFM message is passed specifically via said designated physical link, thereby to allow examination of any physical link of said single logical link."

39.     As an additional example, NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '928 Patent, including but not limited to claim 22, at least because NoAC does not make, use, sell, or offer to sell any product, system, platform, or service that includes or practices the following exemplary limitations: "A method for implementing connectivity fault management (CFM) functions in a network, comprising: a) connecting first and second maintenance entities via a link aggregation group (LAG), said LAG comprising a single logical link made up of a plurality of physical links"; "b) using said first maintenance entity to select one of said physical links as a designated link of said LAG"; "c) verifying the functioning of said designated link by analyzing the outcome of said forwarding, each of said physical links being selectable as said designated link, thereby to provide for examination as required for any physical link of said group comprising said single logical link."

40.     For this, and other reasons to be established through discovery, NoAC denies that it infringes any valid claim of the '928 Patent.

41.     There is an actual and justiciable controversy between Correct Transmission and NoAC arising under the Patent Act, 35 U.S.C. §§ 1, *et. seq.*, concerning Correct Transmission's allegations that NoAC infringes the '928 Patent.

42.     NoAC is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents,

any valid, enforceable claim of the '928 Patent.

43.     Absent a declaration that NoAC does not infringe the '928 Patent, Correct Transmission will continue to wrongfully assert the '928 Patent against NoAC and thereby cause NoAC irreparable harm and injury.

## FIFTH COUNTERCLAIM – DECLARATION OF NON-INFRINGEMENT (U.S. PATENT NO. 7,983,150)

44.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

45.     Correct Transmission alleges that NoAC has infringed and continues to infringe at least claims 1 and 11 of the '150 Patent.

46.     NoAC denies that it infringes any valid claim of the '150 Patent.

47.     NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '150 Patent, including but not limited to claim 1, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service that includes or practices the following exemplary limitations: "A method for communication over a bi-directional ring network that includes nodes connected by spans of the ring network, the method comprising: provisioning a virtual private local area network service (VPLS) to serve users over the bi-directional ring network, the VPLS comprising connection termination points provisioned respectively on a plurality of the nodes so as to connect each of the plurality of the nodes to a second network external to the ring network"; "activating a selected connection termination point, to establish a connection between the bi-directional ring network and the second network"; "as long as the nodes and spans are fully operational, maintaining all of the connection termination points except the selected connection termination point in a deactivated state, so that only the selected connection termination point to the second

network is active"; "exchanging messages among the nodes indicative of: a failure in at least two spans of the ring network causing a segmentation of the ring network and leading to an isolation of a first node of the ring network from at least one second node of the ring network"; "responsively to the messages, activating at least one of the deactivated connection termination points so as to overcome the segmentation and maintain connectivity of the first node with the at least one second node of the ring network, without creating a loop in the VPLS via the second network."

48.     As an additional example, NoAC does not make, use, sell, or offer to sell any product, platform, or service that practices every element of any claim of the '150 Patent, including but not limited to claim 11, at least because NoAC does not make, use, sell, or offer to sell any product, platform, or service performs the following exemplary limitations: "A system for communication, comprising nodes connected by spans so as to define a bi-directional ring network, over which a virtual private local area network service (VPLS) is provisioned to serve users"; "the VPLS comprising connection termination points provisioned respectively on a plurality of the nodes so as to connect each of the plurality of the nodes to a second network external to the ring network"; "with a connection established between the bi-directional ring network and the second network via a selected connection termination point in an activated state, wherein as long as the nodes and spans are fully operational, all of the connection termination points except the selected connection termination point are maintained in a deactivated state"; "so that only the selected connection termination point to the second network is active"; "wherein the nodes are arranged to exchange messages indicative of: a failure in at least two spans of the ring network causing a segmentation of the ring network and leading to an isolation of a first node of the ring network from at least one second node of the ring network";

"responsively to the messages, to activate at least one of the deactivated connection termination points so as to overcome the segmentation and maintain connectivity of the first node with the at least one second node of the ring network, without creating a loop in the VPLS via the second network."

49.     For this, and other reasons to be established through discovery, NoAC denies that it infringes any valid claim of the '150 Patent.

50.     There is an actual and justiciable controversy between Correct Transmission and NoAC arising under the Patent Act, 35 U.S.C. §§ 1, *et. seq.*, concerning Correct Transmission's allegations that NoAC infringes the '150 Patent.

51.     NoAC is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any valid, enforceable claim of the '150 Patent.

52.     Absent a declaration that NoAC does not infringe the '150 Patent, Correct Transmission will continue to wrongfully assert the '150 Patent against NoAC and thereby cause NoAC irreparable harm and injury.

## SIXTH COUNTERCLAIM – DECLARATION OF INVALIDITY
### (U.S. PATENT NO. 6,876,669)

53.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

54.     An actual case or controversy exists between NoAC and Correct Transmission as to whether the '669 Patent is invalid.

55.     Each claim of the '669 Patent is invalid because the patents and the alleged inventions therein fail to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112. For example, each claim of the '669

Patent is invalid over at least U.S. Patent No. 6,631,132, Sklower et al., *PPP Multilink Protocol*, August 1996, U.S. Patent No. 6,633,564, and U.S. Patent No. 6,577,596.

56. A judicial declaration is necessary and appropriate so that NoAC may ascertain its rights as to whether the '669 Patent is invalid.

57. This is an exceptional case under 35 U.S.C. § 285 because Correct Transmission filed its Complaint with knowledge of the facts stated in this Counterclaim.

## SEVENTH COUNTERCLAIM – DECLARATION OF INVALIDITY (U.S. PATENT NO. 7,127,523)

58. NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

59. An actual case or controversy exists between NoAC and Correct Transmission as to whether the '523 Patent is invalid.

60. Each claim of the '523 Patent is invalid because the patents and the alleged inventions therein fail to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112. For example, each claim of the '523 Patent is invalid over at least U.S. Patent No. 6,188,694, U.S. Patent No. 6,339,595, and E. Rosen et al., *BGP/MPLS VPNs* (March 1999).

61. A judicial declaration is necessary and appropriate so that NoAC may ascertain its rights as to whether the '523 Patent is invalid.

62. This is an exceptional case under 35 U.S.C. § 285 because Correct Transmission filed its Complaint with knowledge of the facts stated in this Counterclaim.

## EIGHTH COUNTERCLAIM – DECLARATION OF INVALIDITY (U.S. PATENT NO. 7,283,465)

63. NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

64.     An actual case or controversy exists between NoAC and Correct Transmission as to whether the '465 Patent is invalid.

65.     Each claim of the '465 Patent is invalid because the patents and the alleged inventions therein fail to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112. For example, each claim of the '465 Patent is invalid over at least U.S. Patent No. 7,269,132, U.S. Patent No. 7,430,735, and U.S. Patent No. 7,209,435.

66.     A judicial declaration is necessary and appropriate so that NoAC may ascertain its rights as to whether the '465 Patent is invalid.

67.     This is an exceptional case under 35 U.S.C. § 285 because Correct Transmission filed its Complaint with knowledge of the facts stated in this Counterclaim.

## NINETH COUNTERCLAIM – DECLARATION OF INVALIDITY
## (U.S. PATENT NO. 7,768,928)

68.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

69.     An actual case or controversy exists between NoAC and Correct Transmission as to whether the '928 Patent is invalid.

70.     Each claim of the '928 Patent is invalid because the patents and the alleged inventions therein fail to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112. For example, each claim of the '928 Patent is invalid over at least ITU-T Recommendation Y.1731: OAM functions and mechanisms for Ethernet based network, U.S. Patent No. 6,198,726, and U.S. Patent No. 6,957,369.

71.     A judicial declaration is necessary and appropriate so that NoAC may ascertain its rights as to whether the '928 Patent is invalid.

72.     This is an exceptional case under 35 U.S.C. § 285 because Correct Transmission filed its Complaint with knowledge of the facts stated in this Counterclaim.

## TENTH COUNTERCLAIM – DECLARATION OF INVALIDITY
### (U.S. PATENT NO. 7,983,150)

73.     NoAC re-alleges and incorporates by reference, as if fully set forth herein, all preceding paragraphs above.

74.     An actual case or controversy exists between NoAC and Correct Transmission as to whether the '150 Patent is invalid.

75.     Each claim of the '150 Patent is invalid because the patents and the alleged inventions therein fail to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112. For example, each claim of the '150 Patent is invalid over at least Japanese Patent Application Publication No. 2003-258822, U.S. Patent Application No. 2007/0008982, and U.S. Patent Application Publication No. 2003/0154315.

76.     A judicial declaration is necessary and appropriate so that NoAC may ascertain its rights as to whether the '150 Patent is invalid.

77.     This is an exceptional case under 35 U.S.C. § 285 because Correct Transmission filed its Complaint with knowledge of the facts stated in this Counterclaim.

## IV.     RESERVATIONS

NoAC reserves the right to supplement and/or amend their defenses and/or counterclaims as discovery proceeds in this case.

## V.     DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, NoAC respectfully demands a trial by jury on all issues so triable in this action.

## VI.    REQUEST FOR RELIEF

NoAC respectfully requests that this Court enter judgment as follows:

1.    A judgment dismissing Correct Transmission's Complaint against NoAC with prejudice;

2.    A judgment in favor of NoAC on all of its Defenses;

3.    A judgment denying any relief whatsoever, including but not limited to injunctive relief, in favor of Correct Transmission;

4.    A judgment in favor of NoAC on its Counterclaims;

5.    A judgment that NoAC has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claim of any of the Asserted Patents;

6.    A judgment that this action is an exceptional case within the meaning of 35 U.S.C. § 285 and that NoAC is entitled to recover its reasonable attorneys' fees upon prevailing in this action;

7.    An award to NoAC of its fees and expenses of litigation, including but not limited to attorneys' fees and costs;

8.    A judgment limiting or barring Correct Transmission's ability to enforce the Asserted Patents in equity;

9.    Such other and further relief as this Court may deem just and proper.

Dated: December 14, 2022                         RESPECTFULLY SUBMITTED,

                                                 /s/ John D. Haynes
                                                 Deron R. Dacus (TX Bar No. 00790553)
                                                 THE DACUS FIRM

821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543
Email: ddacus@dacusfirm.com

John D. Haynes (GA Bar No. 340599)
David Frist (GA Bar No. 205611)
Sloane Kyrazis (GA Bar No. 878240)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: john.haynes@alston.com
Email: david.frist@alston.com
Email: sloane.kyrazis@alston.com

M. Scott Stevens (NC Bar No. 37828)
Erin Beaton (NC Bar No. 59594)
Nicholas C. Marais (NC Bar No. 53533)
ALSTON & BIRD LLP
One South at The Plaza
101 South Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000
Facsimile:  (704) 444-1111
scott.stevens@alston.com
erin.beaton@alston.com
nic.marais@alston.com

Thomas W. Davison (FL Bar No. 55687)
ALSTON & BIRD LLP
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax:     202.239.3333
Email: tom.davison@alston.com

Katherine G. Rubschlager (CA 328100)
katherine.rubschlager@alston.com
ALSTON & BIRD LLP
1950 University Ave., Suite 430
East Palo Alto, CA 94303
Telephone: (650) 838-2000
Facsimile: (650) 838-2001

*Attorneys for Defendants Nokia*
*Corporation, Nokia Solutions and Networks*
*Oy, and Nokia of America Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties

who have appeared in this case on December 14, 2022, via the Court's CM/ECF system.


*/s/ John D. Haynes*
John D. Haynes

*Attorneys for Defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation*