████████████████████████████████

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CORRECT TRANSMISSION, LLC, | | |
| Plaintiff, | | Case No. 2:22-cv-00343-JRG-RSP |
| v. | | **JURY TRIAL DEMANDED** |
| NOKIA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, AND NOKIA OF AMERICA CORPORATION, | | |
| Defendants. | | |

**NOKIA'S MOTION TO STRIKE AND EXCLUDE PORTIONS**
**OF THE EXPERT REPORT OF DR. ERIC COLE**

████████████████████████████

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARDS ...........................................................................................2

    A. *DAUBERT* STANDARD ............................................................................ 2

    B. APPORTIONMENT.................................................................................... 2

III. DR. COLE'S APPORTIONMENT OPINIONS.......................................................3

    A. DR. COLE DID NOT FORM AN INDEPENDENT OPINION REGARDING INFRINGEMENT................................................................................................ 3

    B. OVERVIEW OF DR. COLE'S APPORTIONMENT ANALYSIS ....................... 3

IV. ARGUMENT..........................................................................................................8

    A. THE COURT SHOULD STRIKE AND EXCLUDE DR. COLE'S OPINIONS ON INFRINGEMENT............................................................................................ 8

    B. THE COURT SHOULD STRIKE AND EXCLUDE DR. COLE'S APPORTIONMENT ANALYSIS. ...................................................................... 8

        1. Dr. Cole's Analysis Should Be Excluded Because He Does Not Provide Any Justification for His Identification of Allegedly Infringing Features. 8

        2. Dr. Cole's Apportionment Analysis Should Also Be Excluded Because He Fails to Apportion the Value of the Asserted Patented Technologies to the Accused Products........................................................................................ 12

V. CONCLUSION.....................................................................................................15

████████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................................2, 9

*Elder v. Tanner*,
   205 F.R.D. 190 (E.D. Tex. 2001)..................................................................................8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).....................................................................................3

*Garretson v. Clark*,
   111 U.S. 120 (1884).....................................................................................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).....................................................................................2

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) (en banc) .......................................................................2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018).......................................................................................2

*Uniloc USA Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)..................................................................................2, 3

*VirnetX, Inc. v. Cisco Sys.*,
   767 F.3d 1308 (Fed. Cir. 2014).....................................................................................9

**RULES**

Fed. R. Evid. 702 ..............................................................................................................2

**STATUTES**

35 U.S.C. § 284.................................................................................................................2

████████████████████████████████

**TABLE OF EXHIBTIS**

| No. | Exhibit |
|-----|---------|
| A | Excerpts of the Expert Report of Dr. Eric Cole on Technical Apportionment of the Asserted Patents, dated November 22, 2023 ("Cole Rpt.") |
| B | Excerpts of the Expert Report of Dr. Ricardo Valerdi Regarding Infringement of the Asserted Patents, dated November 22, 2023 ("Valerdi Rpt.") |
| C | Excerpts of Rough Transcript for the Deposition of Dr. Eric Cole, dated December 28, 2023 ("Cole Rough Tr.") |
| D | Excerpts of Rough Transcript for the Deposition of Dr. Ricardo Valerdi, dated January 4, 2024 ("Valerdi Rough Tr.") |
| E | Excerpts of the Transcript for the Deposition of Mr. Alfred Nothaft, dated October 26, 2023 ("Nothaft Tr.") |
| F | Excerpt of the Expert Report of Mr. Stephen Dell, dated November 22, 2023 ("Dell Rpt.") |

███████████████████████████████████████

## I.    INTRODUCTION

Correct Transmission, LLC ("Correct Transmission")'s expert, Dr. Eric Cole, purports to apportion the incremental value of the Asserted Patents to the Accused Products, but his analysis is fundamentally flawed in multiple respects and should precluded.

First, the foundation of Dr. Cole's apportionment analysis relies on his assertion that certain "features" on the Accused Products infringe the Asserted Patents. Dr. Cole admits that he did not conduct his own infringement analysis on these "features," but rather relied on the infringement analysis performed by a different Correct Transmission expert, Dr. Valerdi. Dr. Valerdi admits, however, that he also did not analyze whether any of the "features" that Dr. Cole relies on for his apportionment analysis satisfy any of the claims asserted in this case. This renders Dr. Cole's apportionment analysis wholly speculative because his apportionment analysis does not even attempt to apportion between the accused functionality and the other unpatented functionality. For this reason alone, Dr. Cole should therefore be precluded from offering any testimony concerning his apportionment analysis.

Second, at best, Dr. Cole identifies product features (which no expert ties to the Asserted Patents) and then calculates the percentage to which those features as a whole contribute to the Accused Products. But Dr. Cole does not attempt to apportion the value of the patented technologies to those accused features or make any attempt to account for the contribution of unpatented technologies to those features. For example, although Dr. Cole purports to separately apportion the value of each of the Asserted Patents, his calculations attribute the entire value of many of the same features to each of the Asserted Patents. His calculations for each individual patent thus include the contributions for the other Asserted Patents and a host of other technologies that are not covered by any of the Asserted Patents. As a result, his calculations are legally insufficient and unreliable.

1

██████████████████████████████████████

## II.   LEGAL STANDARDS

### A.   *Daubert* Standard

An expert who is qualified may testify in the form of an opinion if the proponent demonstrates to the court that it is more likely than not that (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert's opinion reflects a reliable application of the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Court exercises this gatekeeping role to preclude expert opinions that are neither reliable nor tied to the relevant facts and circumstances of this case. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 597-598 (1993); *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Vigilance in precluding the admission of such expert testimony is critical because of its potentially misleading and powerful influence on untrained jurors. *Daubert*, 509 U.S. at 595; Fed. R. Evid. 702.

The party tendering an expert bears the burden of establishing the admissibility of the expert's testimony and of persuading the court to allow the expert to testify. *Daubert*, 509 U.S. at 592 n.10; *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). This was recently confirmed in the Advisory Committee Note on the change to FRE 702 explaining the Court's gatekeeping role. *See* Dec. 1, 2023, Advisory Committee Note to FED. R. EVID. 702.

### B.   Apportionment

Upon a finding of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonably royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. However, "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). The patentee bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

2

███████████████████████

Thus, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . ." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Accordingly, royalties must be apportioned between the allegedly infringing and non-infringing features of the product. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded. *Uniloc USA*, 632 F.3d at 1315.

## III.    DR. COLE'S APPORTIONMENT OPINIONS

On November 22, 2023, Correct Transmission served the Expert Report of Dr. Eric Cole on Technical Apportionment of the Asserted Patents (the "Cole Report"). The asserted patents are U.S. Patent No. 6,876,669 (the "'669 patent"); U.S. Patent No. 7,127,523 (the "'523 patent"); U.S. Patent No. 7,283,465 (the "'465 patent"); U.S. Patent No. 7,768,928 (the "'928 patent"); and U.S. Patent No. 7,983,150 (the "'150 patent") (collectively, the "Asserted Patents").

### A.    Dr. Cole Did Not Form an Independent Opinion Regarding Infringement

Although Dr. Cole provides conclusory statements regarding infringement of the Accused Products in his expert report, Dr. Cole made clear in his deposition that he did not offer and has not formed an opinion on infringement and did not attempt to perform any infringement analysis on an element-by-element basis. Ex. C (Cole Rough Tr.) at 8:21–9:1; *see also id.* at 10:9–11:25. Instead, Dr. Cole clarified that any opinions that he has regarding infringement are based entirely on opinions provided by Dr. Valerdi. *Id.* at 8:21–9:1.

### B.    Overview of Dr. Cole's Apportionment Analysis

Dr. Cole's apportionment analysis purports to identify the percentage of infringing features in the Accused Products as compared to non-infringing features, but his methodology does no such thing. Ex. C (Cole Rough Tr.) at 22:2–7; *see also id.* at 31:5–9. Dr. Cole performed his analysis separately for each of the Asserted Patents, but his process was the same for each patent. Ex. A

3

███████████████████████████████

(Cole Rpt.) at ¶¶ 135–153 ('523 patent); ¶¶ 154–170 ('669 patent); ¶¶ 171–189 ('465 patent); ¶¶ 190–208 ('928 patent); ¶¶ 209–229 ('150 patent).

First, Dr. Cole opined that the value of each Accused Product should be apportioned between hardware (75%) and software (25%). Ex. A (Cole Rpt.) at ¶¶ 139, 158, 175, 194, 213. Dr. Cole then focused his apportionment analysis on the value of Asserted Patents to the software (as opposed to the hardware) in the Accused Products. Ex. C (Cole Rough Tr.) at 21:20–22:14.

To evaluate the value of the Accused Patents to software, Dr. Cole used marketing materials from Nokia (specifically a brochure listing several "Software features") that generally list nine categories of functionality provided by the software. Ex. A (Cole Rpt.) at ¶¶ 140, 159, 176, 195, 214. ███████████████████████████████

███████████████████████████████

███████████████████████████████ *Id.* at ¶¶ 140, 159, 176, 195, 214. Dr. Cole arbitrarily attributed equal value to each of the software feature categories, and thus allocated 1/9th (or 11.11%) of the total value of the software to each category. Ex. A (Cole Rpt.) at ¶¶ 141, 160, 177, 196, 215. Dr. Cole's opinion that each feature category should be apportioned equal value is not based on discussions with Nokia or its customers. Instead, it was based only on Dr. Cole's own opinion after looking at Nokia's documentation.  Ex. C (Cole Rough Tr.) at 26:1–11 ("That was based on the analysis of looking at Nokia's documentation and based on how they were representing those features *in my opinion* they were representing each of them being important and having equal value . . .").

Then, for each category of software "features," Dr. Cole identifies each sub-feature that he alleges infringe the given patent (but he admittedly does not provide his own opinion that these sub-features infringe any Asserted Patent, either alone or in combination). Ex. A (Cole Rpt.)

4

at ¶¶ 143, 145, 147, 149 ('523 patent); ¶¶ 162, 164, 166 ('669 patent); ¶¶ 179, 181, 183, 185 ('465 patent); ¶¶ 198, 200, 202, 204 ('928 patent); ¶¶ 217, 219, 221, 223, 225 ('150 patent). Dr. Cole accuses many of the same sub-features across multiple of the Asserted Patents. The sub-features Dr. Cole alleges are infringing are summarized below:[1]



Treating each sub-feature equally (again based on an arbitrary assumption of equal value), Dr. Cole purports to determine the percentage of each category of features that is alleged to be infringing each patent. Ex. A (Cole Rpt.) at ¶¶ 144, 146, 148, 150 ('523 patent); ¶¶ 163, 165, 167 ('669 patent); ¶¶ 180, 182, 184, 186 ('465 patent); ¶¶ 199, 201, 203, 205 ('928 patent); ¶¶ 218, 220, 222, 224, 226 ('150 patent). Dr. Cole's analysis for each feature is summarized below:

████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Finally, for each patent, Dr. Cole determines the overall contribution of the allegedly infringing software features to the Accused Products by adding together the percentage of each feature category that allegedly infringes the patents. Ex. A (Cole Rpt.) at ¶¶ 153, 170, 189, 208, 229. For example, Dr. Cole's analysis for the '523 patent is reproduced below. Ex. A (Cole Rpt.) at ¶ 153. ████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

7

██████████████████████████████████████████████████

The final result is purportedly a percentage of value to which each Asserted Patent is alleged to contribute to the Accused Products. The following are the percentages that Dr. Cole calculated for each Asserted Patent: ███████████████████████████████████

████████████████████████████████████████████. Ex. A (Cole Rpt.) at ¶¶ 153, 170, 189, 208, 229.

## IV.    ARGUMENT

### A.    The Court Should Strike and Exclude Dr. Cole's Opinions on Infringement.

To the extent that Dr. Cole intends to provide opinions related to infringement, those opinions should be excluded. As an initial matter, Dr. Cole admits that he did not provide any opinion on infringement. Ex. C (Cole Rough Tr.) at 8:21–9:1; *see also id.* at 10:9–11:25 ██████████

██████████████████████████████████████); *id.* at 34:11–12 ████████████

██████████████████████████████████). Additionally, his opinions are entirely conclusory, and thus failed to put Nokia on notice of his opinions on infringement. These conclusory opinions on infringement will not assist the trier of fact. *Elder v. Tanner*, 205 F.R.D. 190, 193–94 (E.D. Tex. 2001) ("It is not sufficient simply to list the resources they utilized and then state an ultimate opinion without some discussion of their thought process").

### B.    The Court Should Strike and Exclude Dr. Cole's Apportionment Analysis.

Dr. Cole's opinions on apportionment should be excluded because it fails to apportion the value of the Asserted Patented technologies to the Accused Products relative to the value of other unpatented technologies.

#### 1.    Dr. Cole's Analysis Should Be Excluded Because He Does Not Provide Any Justification for His Identification of Allegedly Infringing Features.

As a threshold matter, for Dr. Cole's apportionment analysis to be reliable, Dr. Cole must accurately identify the features of the Accused Products that are covered by the Asserted Patents.

███████████████████████████████████████

Dr. Cole failed to do so here. Ex. A (Cole Rpt.) at ¶¶ 143, 145, 147, 149 ('523 patent); ¶¶ 162, 164, 166 ('669 patent); ¶¶ 179, 181, 183, 185 ('465 patent); ¶¶ 198, 200, 202, 204 ('928 patent); ¶¶ 217, 219, 221, 223, 225 ('150 patent). His opinion is thus unreliable and should be excluded.

Dr. Cole admits that he did not provide any opinion on infringement, nor did he determine the features of the Accused Products that are allegedly covered by any Asserted Patent. Ex. C (Cole Rough Tr.) at 8:21–9:1; *see also id.* at 10:9–11:25 ███████████████████████ ███████████████████ ); *id.* at 34:11–12 ("██████████████████████████ ████████████████████████████ ). Instead of providing an independent analysis, Dr. Cole admits that he relied on Dr. Valerdi to identify the features allegedly covered by the Asserted Patents. Critically, however, **Dr. Valerdi does not provide an analysis of the marketing brochure that list the features, nor did he make any attempt to determine which features are allegedly covered by any Asserted Patent**. Thus, neither Dr. Cole nor Dr. Valerdi tie the features identified by Dr. Cole to any infringement theory offered in this case. *See VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (explaining that an expert's testimony should be excluded where he fails "to link demand for the accused device to the *patented feature*" (emphasis added)).

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████ could survive a *Daubert* challenge would be if Dr. Valerdi tied these features to his infringement theory. But Dr. Valerdi did no such thing.

Presented with the **same** product marketing brochure relied on by Dr. Cole, Dr. Valerdi explained that "████████████████████████████████████ ██████████████████ Ex. D (Valerdi Rough Tr.) at 122:21–23. As an example, █████ ████████████████████████████████████████ ████████████████████████████████████████ ██████ In fact, Dr. Valerdi expressly rejected Dr. Cole's assertion that the feature groups Dr. Cole relies on for his apportionment analysis are accused of infringing in this case:



Dr. Cole's errors in relying on these feature categories is further highlighted by what Dr. Valerdi actually accused of infringement. For example, Dr. Valerdi alleges that claim 10 of the '523 patent "is infringed by Nokia's service routers and Virtual Private LAN Service and Spanning Tree Protocol supported by Nokia's Service Router Operating System (SR OS)." Ex. B (Valerdi Rpt.) at ¶ 404. Dr. Cole, however, does not include Nokia's "Routed VPLS with Internet Enhanced Services" as an allegedly infringing feature for the '523 patent. Instead, ████████████ ████████████████████████████████████████ ███████████████████████████████████ *Compare* Ex. A (Cole Rpt.) at ¶ 143, *with* Ex. D (Valerdi Rough Tr.) at 120:1–4. ████████████ ████████████████████████████████████████

███████████████████████████████████████████████████████████

Ex. C (Cole Rough Tr.) at 24:18–24. ████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ *Compare* Ex. A (Cole Rpt.) at ¶ 166, *with* Ex. D (Valerdi Rough

Tr.) at 119:9–12. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. C (Cole Rough Tr.) at 35:11–20.

An even more absurd result of Dr. Cole failing to rely on features actually accused of infringement can be seen with respect to the '669 patent. Dr. Cole relies on the 7250 product as a representative product for his apportionment analysis for each of the five Asserted Patents, including the '669 patent. Ex. C (Cole Rough Tr.) at 19:2–17. What Dr. Cole apparently failed to realize is that Correct Transmission does not accuse the 7250 product of infringing the '669 patent. *See* Ex. F (Dell Rpt.) at Attachment 4 n.6 (listing products accused of infringement); Ex. D (Valerdi Rough Tr.) at 33:1–6; 34:1–35:1 (Dr. Valerdi admitting he did not independently evaluate what products supported LFI). ███████████████████████████████████████

████████████████████████████████████████ ████████████████████

████████████████████████████████████████████████████████████████

████ Nevertheless, Dr. Cole's entire apportionment analysis of the '669 patent relies on features in the 7250 product, which does not have the functionality accused of infringing that patent. Ex. A (Cole Rpt.) at ¶¶ 155–170. This not only shows that Dr. Cole's apportionment of the '669 patent is fatally flawed, but also highlights the flaws underlying the entirety of Dr. Cole's apportionment analysis.

Dr. Cole's apportionment analysis is thus wholly speculative because he attempts to apportion between a universe of features that are not tied to the allegations of infringement. Thus,

11

████████████████████████████████████████████

Dr. Cole should be precluded from offering any testimony concerning his apportionment analysis.

> **2.    Dr. Cole's Apportionment Analysis Should Also Be Excluded Because He Fails to Apportion the Value of the Asserted Patented Technologies to the Accused Products.**

Dr. Cole's apportionment analysis should also be excluded for two additional reasons. First, Dr. Cole failed to apportion for the relevant contributions of the Asserted Patents to the accused features. Specifically, Dr. Cole assumes that each Asserted Patent is entitled to the full value (i.e., 100%) of the product feature to which it purportedly contributes. He then applies that full value of each product feature to multiple patents, improperly increasing the value of the patents up to five times for certain features. Second, Dr. Cole failed to apportion for unpatented technology. His apportionment analysis should be struck for each of these reasons.

> **a.    Dr. Cole's Apportionment Analysis Does Not Account for Relative Contributions of the Asserted Patents to Accused Features**

In Dr. Cole's report, he initially stated that "each Asserted Patent's respective invention has a complementary, or at a minimum, non-redundant impact on value to a consumer." Ex. A (Cole Rpt.) at ¶ 128. Using that logic, Dr. Cole aggregated the individual percentages he calculated for each Asserted Patent to purportedly determine the overall contribution of the Asserted Patents to the accused features. Ex. A (Cole Rpt.) at ¶ 128 ("████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████"); *id.* at ¶ 230 (the analysis for each patent ████████████████████████████

████████████████████████).

Dr. Cole, however, clarified in his deposition that his analysis for each patent was performed independently and that he did not consider whether the same feature infringed multiple patents when assessing the contribution of each Asserted Patent to an accused feature. Ex. C (Cole

████████████████████████████████████████████

Rough Tr.) at 38:22–39:1. This clarification was critical because treating his apportionment of each Asserted Patent as additive leads to the absurd result where the full value of an individual feature is attributed to multiple Asserted Patents, and no attempt is made to determine the relative contributions of each of those Asserted Patents to the particular feature.  As a result, when Dr. Cole calculates the overall contributions of those features to the Accused Products, he effectively double-, triple-, quadruple, and even quintuple-counts the contribution of the Asserted Patents to the accused features. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

As shown below in the aggregated totals column of Table 3, when aggregated across the five asserted patents, Dr. Cole's apportionment analysis allocates 250% of ████████████████ to the Asserted Patents. This is impossible, and as Dr. Cole testified, the maximum allocation for the ████████████ should be 100%. Ex. C (Cole Rough Tr.) at 31:10–18. Similar errors occur for ████████████████████████████████████████, for which aggregating Dr. Cole's calculations would also exceed 100%.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[2] This table includes the allocations for each feature category for each Asserted Patent from Dr. Cole's report. It also includes an Aggregated Total column which shows the resulting percentage if Dr. Cole's allocations are added for all of the Asserted Patents.

██████████████████████████████████

Ignoring the potential issues with double counting, Dr. Cole testified that, if he determined that a particular feature was infringing multiple of the asserted patents, that he did not try to determine the relative value or perform any cross analysis of the feature to determine the relative contribution of each asserted patent to that feature. Ex. C (Cole Rough Tr.) at 38:22–39:1. In the same vein, Dr. Cole testified that he did not perform any cross comparison between the Correct Transmission and Smart Path cases, where he similarly attributed the full value of features to multiple patents in that case. *Id.* at 39:13–24.

> **b.    Dr. Cole's Apportionment Analysis Does Not Account for the Relative Contribution of the Asserted Patents as Compared to Unpatented Technology**

As described above, for each feature that Dr. Cole alleges infringes a particular patent, Dr. Cole automatically allocated 100% of that feature to the asserted patent. Dr. Cole thus did not attempt to apportion the relative contribution of the technology covered by the Asserted Patents against any unpatented technology. Dr. Cole admitted as such during his deposition, stating that the "detailed analysis of breaking out prior art and non prior art was not something I performed for those features or I guess in this case." Ex. C (Cole Rough Tr.) at 28:13–29:9. Because he admittedly made no attempt to apportion for the unpatented features, his analysis is fatally flawed.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ He attempted to justify his actions by stating that even though "the general technologies were known," "there are specific ways of implementing them that weren't known." *Id.* at 28:3–12. Even if true, implementing known technologies in a unique way

14

████████████████████████████████████████████████████

does not mean that the full value of a feature should be allocated to the Asserted Patents when non-patented technologies unquestionably contribute to each such feature.

As another example, for the ██████████████ described above, one of the features Dr. Cole attributes entirely to the Asserted Patents is ████████████. *See, e.g.*, Ex. A (Cole Rpt.) at ¶ 147. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

The errors in Dr. Cole's methodology are further illustrated by the fact that Dr. Cole performs an apportionment analysis using additional patents in a separate patent infringement matter against Nokia's products filed by Smart Path, and he failed to factor into his analysis of the Asserted Patents whether there was any contribution to any allegedly infringing features by the Smart Path patents. Ex. C (Cole Rough Tr.) at 39:13–24.  In short, Dr. Cole's apportionment analysis uses flawed methodology and provides no reliable information regarding the value of the technologies that are actually covered by the Asserted Patents.

## V.    CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court strike the entirety Dr. Cole's apportionment analysis and preclude Dr. Cole from testifying about that analysis.


DATED: January 8, 2024                Respectfully submitted,

                                      BY: */s/ Thomas W. Davison*

                                      Deron R. Dacus (TX Bar No. 00790553)


15

THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543
Email: ddacus@dacusfirm.com

John D. Haynes (GA Bar No. 340599)
David Frist (GA Bar No. 205611)
Sloane Kyrazis (GA Bar No. 878240)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: john.haynes@alston.com
Email: david.frist@alston.com
Email: sloane.kyrazis@alston.com

Thomas W. Davison (FL Bar No. 55687)
ALSTON & BIRD LLP
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333
Email: tom.davison@alston.com

M. Scott Stevens (NC Bar No. 37828)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
scott.stevens@alston.com
erin.beaton@alston.com

Darlena Subashi (NY 5780747)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
darlena.subashi@alston.com

Katherine G. Rubschlager (CA Bar. No. 328100)
ALSTON & BIRD LLP
1950 University Ave., Suite 430
East Palo Alto, CA 94303
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
Email: katherine.rubschlager@alston.com

16

*Attorneys for Defendant Nokia of America Corporation*

17

███████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via electronic mail on January 8, 2024, pursuant to Local Rule CV-5(c).

*/s/ Thomas W. Davison*
Thomas W. Davison

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the Court has granted authorization to file the document under seal as set forth in Paragraph 18 of the Protective Order entered in this case pursuant to Local Rule CV-5(a)(7)(A).

*/s/ Thomas W. Davison*
Thomas W. Davison

## CERTIFICATE OF CONFERENCE

I hereby certify that the Defendant has complied with the meet and confer requirements set forth in Local Rule CV-7(h). Counsel for Defendant met and conferred with counsel for Plaintiff on January 5, 2023. Plaintiff indicated that it opposed the relief sought in the motion.

*/s/ Thomas W. Davison*
Thomas W. Davison

18