**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

CORRECT TRANSMISSION, LLC,

    *Plaintiff*,

v.

    Case No. 2:22-cv-00343-JRG-RSP

NOKIA OF AMERICA CORPORATION,

    JURY TRIAL DEMANDED

    *Defendant*.

**NOKIA'S MOTION TO EXCLUDE**
**<u>MR. DELL'S OPINIONS AND TESTIMONY</u>**

███████████████████████████

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 2

   A.    Mr. Dell's Opinions on ███████ License ............................................ 2

   B.    Mr. Dell's ██████ Benchmark .......................................................... 3

   C.    Mr. Dell's Incremental Profit Premiums ...................................................... 3

   D.    Mr. Dell's Royalty Base .................................................................................. 4

III.    LEGAL STANDARDS ..................................................................................... 5

IV.    ARGUMENT ..................................................................................................... 7

   A.    Mr. Dell Should Be Precluded from Offering Opinions Regarding a ████ ████ License Royalty Rate .................................................................... 7

   B.    Mr. Dell Should Be Precluded from Offering Opinions Regarding the ██████ Damages Model .............................................................................. 8

   C.    Mr. Dell's Incremental Profit Premiums Royalty Rate Should Be Excluded ............ 10

   D.    Mr. Dell's Opinions Regarding the Royalty Base Should Be Excluded ................... 12

V.    CONCLUSION ................................................................................................. 14

███████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alacritech Inc. v. CenturyLink, Inc.*,
  2023 U.S. Dist. LEXIS 181073 (E.D. Tex. Oct. 8, 2023) ...................................................7, 9

*Allen v. Pa. Eng'g Corp.*,
  102 F.3d 194 (5th Cir. 1996) ...........................................................................................7, 9

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ..............................................................................................10

*Cyntec Co. v. Chilisin Elecs. Corp.*,
  84 F.4th 979 (Fed. Cir. 2023) ..............................................................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)................................................................................................1, 6, 13

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................................................6

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..................................................................................................6

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) .............................................................................................11

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) (en banc) .................................................................................6

*Oyster Optics, LLC v. Alcatel-Lucent USA Inc.*,
  No. 2:18-cv-00478-JRG (E.D. Tex. June 24, 2020) ..............................................................8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013)............................................................................................11

*Realtime Data LLC v. EchoStar Corp.*,
  2018 U.S. Dist. LEXIS 202522, No. 6:17-cv-00084-JDL (E.D. Tex. Nov. 15, 2018)............13

*Riles v. Shell Exploration & Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002)..............................................................................................6

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc)..............................................................................11

*Robison v. Cont'l Cas. Co.*,
   No. 1:17-CV-508, 2022 U.S. Dist. LEXIS 21835 (E.D. Tex. Jan. 6, 2022)..............................8

*St. Lawrence Communs. LLC v. ZTE Corp.*,
   2017 U.S. Dist. LEXIS 23505 (E.D. Tex. Feb. 21, 2017) .......................................................10

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011).................................................................................................6

*VirnetX, Inc. v. Cisco Sys.*,
   767 F.3d 1308 (Fed. Cir. 2014).................................................................................................6

**RULES**

Fed. R. Evid. 702 ..........................................................................................................................1, 6

Fed. R. Evid. 104(a) ..........................................................................................................................6

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| 1 | Excerpts of Expert Report of Stephen E. Dell, CVA, dated Nov. 22, 2023 ("Dell Rep.") |
| 2 | |
| 3 | Excerpts of Order Memorializing Pre-Trial Rulings, *Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*, No. 2:18-cv-00478-JRG (June 24, 2020) (Dkt. 57) |
| 4 | Excerpts of Rough Transcript of Deposition of Eric Cole, dated Dec. 28, 2023 ("Cole Dep.") |
| 5 | Excerpts of Transcript of Deposition of Herve Desveaux, dated Oct. 25, 2023 ("Desveaux Dep.") |
| 6 | Excerpts of Expert Report of Dr. Eric Cole on Technical Apportionment of the Asserted Patents, dated Nov. 22, 2023 ("Cole Rep.") |
| 7 | Declaration of Herve Patrick Desveaux, dated Dec. 11, 2023 ("Desveaux Dec.") |
| 8 | Excerpts of Transcript of Deposition of Richard Foote, dated Nov. 15, 2023 ("Foote Dep.") |
| 9 | Excerpts of Transcript of Deposition of Alfred Nothaft, dated Oct. 26, 2023 ("Nothaft Dep.") |
| 10 | Excerpts of Rough Transcript of Deposition of Dr. Ricardo Valerdi, dated Jan. 4, 2024 ("Valerdi Dep.") |

████████████████████████████████████████

## I.     INTRODUCTION

Defendant hereby moves to exclude the opinions of Plaintiff's damages expert, Mr. Stephen Dell, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence because Mr. Dell's opinions are speculative and unreliable for at least the reasons below.

First, Mr. Dell inappropriately relies on unreliable hearsay statements included in a license agreement between ████████████████████████████████ to derive a running royalty rate of ███, where the license agreement contains ████████████████████ ████████████████████████████████████.

Second, Mr. Dell inappropriately relies on ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████. Moreover, Mr. Dell's use of the model is entirely speculative as it attributes 100% of the value of the entire portfolio to the Asserted Patents in the present case.

Third, Mr. Dell used an unreliable and unsupported "apportionment factor" to determine the incremental value of the patented features to the Accused Products. Mr. Dell relied on the analysis of Dr. Cole, which is deeply flawed for the reasons described in Nokia's *Daubert* motion and motion to strike the testimony of Dr. Cole filed concurrently herewith.

Finally, Mr. Dell inappropriately includes revenue from unrelated products and services in his royalty base without showing that the entire market value rule applies and that the patented features drive consumer demand. Mr. Dell also makes no attempt to apportion down the unrelated revenue to the smallest saleable patent-practicing unit. Accordingly, Mr. Dell's damages figures are based on an unsupported damages base and should be excluded.

██████████████████████████████████████████

## II.     STATEMENT OF FACTS

To derive his ultimate opinion as to a reasonable royalty rate, Mr. Dell calculated three royalty benchmarks, as shown in the table in Figure 14 below. Ex. 1 (Dell Rep.) at ¶ 350. Below is a high-level explanation of the relevant facts for each alleged benchmark.



### A.     Mr. Dell's Opinions on ███████████████████████

Mr. Dell opines that ████████████████████████████████████████████ ████████████████████ and that the parties to the hypothetical negotiation would have considered the agreement "a relevant data point." Ex. 1 (Dell Rep.) at ¶ 162. Mr. Dell divides ██ ████████████████████████████████████████████████████████████████ ███████████████████████████████. *Id.* at ¶ 305; *see id.* at ¶ 157.

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Mr. Dell ignores the actual license and instead bases his alleged royalty rate on ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ *Id.* The licensee, however, ████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* Mr. Dell uses ████████████

█████████████████████████████████████████████. *See*

Ex. 1 (Dell Rep.) at ¶¶ 159-60. The recital by ████████ is hearsay and is not a reliable basis

on which to derive ████████████████████████████████████████████

██████████████████.

**B.    Mr. Dell's ████████ Benchmark**

To derive the ████████ benchmark, Mr. Dell relies on ██████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████. Ex. 1 (Dell Rep.) at ¶ 284. Mr. Dell then speculates ████████████████

████████████████████████████████████████████████████████████

█████████████████████████ *Id.* at ¶ 292. Mr. Dell then concludes that "the

Asserted Patents are included in the most valuable patent assets within the Orckit portfolio" based

on his "understanding of the technological contribution and benefits attributed to the respective

Asserted Patents from Dr. Cole and Dr. Valerdi, including the fact that the Asserted Patents are in

fact the patents identified for infringement claims in this case." *Id.* at ¶ 292, n.512. Based on this

speculation, Mr. Dell divides ████████████████████████████████████████████

████████████████ that has no connection to the Asserted Patents or any technological benefit

provided by those patents. *Id.* at ¶¶ 292, n.513.

**C.    Mr. Dell's Incremental Profit Premiums**

To calculate his apportioned incremental profit premium benchmark, Mr. Dell first

calculated overall incremental profit premiums of ████████████ for the Accused Products ████

███████████████████████████████████

███████████████████████████████████ Ex. 1 (Dell Rep.) at ¶ 320 (emphasis in original).

Next, to "isolate the value attributed to the respective Asserted Patents," Mr. Dell applied apportionment factors supplied by Correct Transmission's apportionment expert, Dr. Cole, for each of the Asserted Patents. Ex. 1 (Dell Rep.) at ¶¶ 321-23. Dr. Cole, however, admitted at his deposition that he did not provide an opinion regarding incremental value of the Asserted Patents. *See, e.g.*, Ex. 4 (Cole Dep.) at 15:7-16:15, 22:15-29:9, 35:11-36:13, 37:18-24, 38:17-39:24. Instead, Dr. Cole's analysis is limited to determining what percentage of the product features allegedly infringe the Asserted Patents and does not account for the contributions of other patented and unpatented technologies. *See id.*

Mr. Dell applied Dr. Cole's apportionment factors to the incremental profit premiums as shown in Figure 12 of his report. Ex. 1 (Dell Rep.) at ¶ 324. As one example, for the '669 patent, Mr. Dell multiplied ███████████████████████████████████ ███████████████████████████████████ allegedly attributable to the patented features of the '669 patent.

Mr. Dell then applied ███████████████████████ to the hypothetical negotiation to derive royalty ranges as set forth in Figure 13 of his report. Ex. 1 (Dell Rep.) at ¶ 328. Mr. Dell then uses the lower end of his calculations ████████████ as one of the royalty rate benchmarks upon which he bases his opinions. Ex. 1 (Dell Rep.) at ¶¶ 350, 353, 355.

### D.    Mr. Dell's Royalty Base

For his royalty base, Mr. Dell includes three categories of revenue that go beyond the Accused Products: (1) unaccused products; (2) accessories associated with the Accused Products (*e.g.*, cables, licensing fees, etc.); and (3) services revenues associated with the Accused Products. Regarding unaccused products, Mr. Dell acknowledges that "Correct Transmission has not

████████████████████████████████████

accused all individual models of the Accused Instrumentalities of infringing all of the Asserted Patents." Ex. 1 (Dell Rep.) at ¶ 99. Yet, Mr. Dell's royalty base is the same for four of the five Asserted Patents and indisputably includes products not accused of infringement for each of the Asserted Patents. *Compare* Ex. 1 (Dell Rep.) at Attachment 10 (accused models) *with id.* at Attachments 3 and 3A (using the same royalty base for four of the five Asserted Patents).

Regarding accessories, testimony from Mr. Desveaux explains that Nokia's financial data ████████████████████████████████████████. For example, when asked ██████████████████████████████████████ ████████████████████████████████████████ Ex. 5 (Desveaux Dep.) at 52:1-12; *see also id.* at 52:13-23; Ex. 7 (Desveaux Dec.) at ¶¶ 3-4. Thus, ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████. *See id.* Mr. Dell made no attempt to apportion down this revenue or exclude revenue for unaccused models, despite Nokia having produced reports demonstrating shipments of and customer contracts for the Accused Products.

Regarding services, Nokia witness Mr. Desveaux testified that ██████████████████ ████████████████████████████████████████ ████████████████████████████████████. Ex. 5 (Desveaux Dep.) at 86:5-24; Ex. 7 (Desveaux Dec.) at ¶¶ 4-6. Although Mr. Dell apportions out services revenue in later periods, Mr. Dell makes no attempt to apportion out services revenue for the period from ██████████████████. *See* Ex. 1 (Dell Rep.) at Attachment 4.

## III.    LEGAL STANDARDS

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the

court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 (effective Dec. 1, 2023). Rule 702 imposes a "special obligation upon a trial judge" to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999).

The party tendering an expert bears the burden of establishing the admissibility of the expert's testimony and persuading the court to allow the expert to testify. *Daubert*, 509 U.S. at 592 n.10; *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To carry this burden, a patentee must sufficiently tie the damages expert's opinion to the facts of the case. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (citing *Daubert*, 509 U.S. at 591); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1332-33 (Fed. Cir. 2014). The expert's damages opinions also must be based on "sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) (quoting *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)). This was recently confirmed in the Advisory Committee Notes on changes to FRE 702 explaining the Court's gatekeeping role. Fed. R. Evid. 702, 2023 Advisory Committee Notes ("[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).").

██████████████████████████████████████████

## IV.    ARGUMENT

### A.    Mr. Dell Should Be Precluded from Offering Opinions Regarding ████████ ████████████ Royalty Rate

Any opinion of Mr. Dell regarding a running royalty rate derived from ████████████ ████ should be excluded as unreliable. In settling their then-pending litigation and entering into a licensing agreement, ███████████████████████████████████████████ ███████████████████████████████████████. *See* Ex. 2 (█████████████████). ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* at NOAC_02531355. The ███████████ statement on which Mr. Dell relies ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████. Mr. Dell thus relies on an out-of-court statement ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ is inherently unreliable. *See, e.g.*, *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) ("[I]f the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable."); *see also Alacritech Inc. v. CenturyLink, Inc.*, 2023 U.S. Dist. LEXIS 181073, at *38 (E.D. Tex. Oct. 8, 2023) (excluding damages expert's opinions relying on valuation by third-party company for lack of reliability).

Notwithstanding the parties' ██████████████████████████████████

█████████████████████████████████████████, Correct Transmission ostensibly wishes to admit ██████████████ hearsay statement for the alleged truth of the assertion through the opinions of Mr. Dell. Mr. Dell's implication of ████████████████████ is based entirely on the purported truth of self-serving double-hearsay statements by ███████████████ and is inherently unreliable. *Robison v. Cont'l Cas. Co.*, No. 1:17-CV-508, 2022 U.S. Dist. LEXIS 21835, at *26-27 (E.D. Tex. Jan. 6, 2022) ("Expert testimony based solely or primarily on the opinions of other experts, however, is inherently unreliable. . . . It is only when the expert undertakes some independent investigation of the underlying opinions that his testimony may be considered reliable." (internal quotations and citations omitted)).

This would not be the first time that this Court has ruled that ███████████ Mr. Dell derives from ████████████████ is unreliable. For example, in *Oyster Optics, LLC v. Alcatel-Lucent USA Inc.*, No. 2:18-cv-00478-JRG (E.D. Tex. June 24, 2020), this Court granted Alcatel's motion *in limine* seeking to preclude evidence or argument regarding the *same* hearsay statements from the *same* ████████████████, where the *same* Mr. Dell opined that the effective royalty rate from ████████████████████████ Ex. 3 at 10. The Court should similarly exclude Mr. Dell's opinions relying on these unreliable hearsay statements.[1]

**B.      Mr. Dell Should Be Precluded from Offering Opinions Regarding █████████████████████████**

Mr. Dell's opinions regarding the alleged royalty rate benchmarks from ████████████ ████████████ should likewise be excluded as unreliable. As explained above, the ████████████ that Mr. Dell relies on is taken from ████████████████ that is wholly untethered to the Asserted Patents and is not even represented as being a reasonable royalty calculation for any

---

[1] Mr. Dell's opinions regarding ████████████████ are contained in paragraphs 159-62, 192, 303, 305, 311, 329-30, 345-46, 350-51, 353, 355-61, and 363-64, and he should not be permitted to offer the opinions contained therein.

portion of the Orckit portfolio. The rates are unrelated to the technology of the Asserted Patents, and additionally are unreliable because ████████ did not actually obtain a license for any of the rates. ████████████████████████████████████████████ is not a reliable benchmark for determining a reasonable royalty. *See Alacritech*, 2023 U.S. Dist. LEXIS 181073, at \*38. In the *Alacritech* case, a third-party valuation of the patentee company was excluded for lack of reliability where the valuation did not actually contain a specific valuation of the asserted patents. *Id.* Further, like the statements in ████████████████, the statements in ████████████████ are also unreliable hearsay offered for the truth of the matter asserted and should be similarly excluded. *See, e.g.*, *Allen*, 102 F.3d at 199.

The unreliability of Mr. Dell's opinion is exacerbated by his attempts to attribute the entirety of the portfolio-wide royalty figures to the 5 Asserted Patents. Mr. Dell opined that 4 to 7 of the patents of the Orckit portfolio drive the entire value of the portfolio, and that the 5 Asserted Patents are among those 4 to 7 patents because they have been selected for assertion of infringement. Ex. 1 (Dell Rep.) at ¶ 292, n.512. But Mr. Dell fails to take into consideration that other patents from the Orckit Portfolio have also been selected for assertion of infringement, including 4 other patents in the Smart Path Case against Nokia alleging infringement by the same products accused in this case. Under Mr. Dell's reasoning, at least those 4 other patents in the Smart Path Case should be considered to drive value for the portfolio, as they have been similarly selected for assertion of infringement.

However, because Mr. Dell has stated that 4 to 7 patents drive the value for the Orckit Portfolio, this means that either the 5 Asserted Patents drive the entire value of the portfolio, or else, at maximum, 2 additional patents also drive that value. Accordingly, any attempt to attribute value to any other patents in the portfolio (beyond the maximum 2 additional patents) would

constitute double counting. For example, 4 patents are asserted in the Smart Path Case alone, so

Mr. Dell is left with either attributing zero value to 2 of the Smart Path patents or double counting.

And in all events, Mr. Dell attributes no value to the remaining 62 patents in the portfolio.

Further, Mr. Dell's calculation of ███████████████████████ is flawed

and unreliable. He calculates ███████████████████████████████████

████████████████████. Ex. 1 (Dell Rep.) at ¶ 292, n.513. However, there are 5 Asserted

Patents, which renders it impossible for each Asserted Patent to be ascribed ████████████

█████████████. Mr. Dell's mathematical error results in ████████████████

███████████████████████████████████████████████████████████

███████████████████████.

Accordingly, Mr. Dell's opinions that attempt to extract a reasonable royalty benchmark

for the Asserted Patents from ███████████████████ should be excluded. *See, e.g., Apple

Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022) (holding expert's opinions unreliable where

expert failed to apportion value to other patents in the portfolio); *St. Lawrence Communs. LLC v.

ZTE Corp.*, 2017 U.S. Dist. LEXIS 23505, at *15-16 (E.D. Tex. Feb. 21, 2017) (excluding

damages opinions that constituted double counting).[3]

### C.    Mr. Dell's Incremental Profit Premiums Royalty Rate Should Be Excluded

Mr. Dell relies entirely on Dr. Cole's apportionment analysis to apportion value between

patented and unpatented features of the Accused Products. Ex. 1 (Dell Rep.) at ¶¶ 321-24. But Dr.

Cole did not even attempt a technical apportionment separating the contribution of the patented

features of the Asserted Patents to other patented and unpatented technologies. Ex. 4 (Cole Dep.)

---

[2] ██████████████████████████████████████████

[3] Mr. Dell's opinions regarding █████████████████ are contained in paragraphs 277-95, 303, 305, 311, 329-30, 347, 350-51, 353, 355-61, and 363-64, and he should not be permitted to offer the opinions contained therein.

at 15:7-16:15, 22:15-24:17, 38:17-39:24. Instead, Dr. Cole merely determined the features that each patent allegedly contributed to, and then evaluated the contribution of those features to the Accused Products, as compared to the contribution from other features to which the Asserted Patents did not contribute. *Id.* None of Correct Transmission's experts even attempted to apportion the technical contribution of any of the Asserted Patents to any particular feature as compared to the other technologies (both patented and unpatented) that contribute to that feature. Moreover, as explained in the Motion to Exclude Dr. Cole's testimony filed concurrently herewith, neither Dr. Cole nor Correct Transmission's infringement expert, Dr. Valerdi, even attempted to determine whether the Asserted Patents actually covered the features for which value is attributed. Dkt. 110; *see also* Ex. 4 (Cole Dep.) at 8:18-9:1, 10:9-11:25, 34:8-12; Ex. 10 (Valerdi Dep.) at 120:1-4, 122:18-23, 119:9-123:9. Thus, Mr. Dell's opinions dependent on Dr. Cole's unreliable technical apportionment are wholly unreliable and must be excluded. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) ("[W]hile an expert's data need not be admissible, the data cannot be derived from a manifestly unreliable source.").

Because Mr. Dell has not performed his own technological apportionment, *see* Ex. 1 (Dell Rep.) at ¶¶ 321-24, all of his opinions regarding the incremental profit premiums relying on Dr. Cole's analysis should be excluded.[4] *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) ("We have repeatedly held that when the accused technology does not make up the whole of the accused product, apportionment is required. . . . This is so even where the proposed royalty base is the smallest saleable patent practicing unit or SSPPU.").

---

[4] Mr. Dell's incremental profit premiums analysis are contained in paragraphs 315-28, 331-34, 348, 350-51, 353, 355-61, and 363-64, and he should not be permitted to offer the opinions contained therein.

██████████████████████████████████████████████████

### D.    Mr. Dell's Opinions Regarding the Royalty Base Should Be Excluded

Mr. Dell improperly includes unaccused products and services in his royalty base without showing that the entire market value rule applies. *See, e.g.*, *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc) ("[T]he entire market value rule permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent-related feature is the 'basis for customer demand.'").

Mr. Dell includes unaccused product models in his royalty base and fails to apportion revenue for the unaccused models. *Compare* Ex. 1 (Dell Rep.) at Attachment 10 (accused models) *with id.* at Attachments 3 and 3A (using the same royalty base for each Asserted Patent). Mr. Dell further includes accused product models that do not include the accused features or necessary interface cards. *See* Ex. 8 (Foote Dep.) at 75:14-76:20 (testifying that ████████████████

████████████████████████████████████████ ); Ex. 9 (Nothaft Dep.) at 26:22-27:13, 120:13-122:1 (explaining that ████████████████████████████████████

████████████████████████████ ); Ex. 10 (Valerdi Dep.) at 33:1-35:1, 85:10-86:21 (testifying that ████████████████████████████████████████████

████████████████████████████████████████████ ). As a result, Mr. Dell also includes revenue from accessories and services revenue associated with the Accused Products[5] without showing that demand for those items is driven by the features of the Asserted Patents. Indeed, according to the analysis of Dr. Cole, which Mr. Dell relies upon, the accused features only drive ████████████ of the value of the Accused Products themselves,

---

[5] Nokia witness Herve Patrick Desveaux conclusively established in his deposition and declaration testimony that, ███████████████████████████████████████████████████████████ *See* Ex. 5 (Desveaux Dep.) at 86:5-16 (stating that for that time period, ████████████████████████████ ); Ex. 7 (Desveaux Dec.) at ¶¶ 4-6.

and there is no analysis that the accused features drive consumer demand for unaccused products and services. *See* Ex. 1 (Dell Rep.) at ¶ 322; Ex. 6 (Cole Rep.) at ¶ 230. Thus, Mr. Dell's damages base is overstated and unreliable, and his opinions regarding the royalty base should be excluded. *See Cyntec Co. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989-90 (Fed. Cir. 2023) (reversing district court's denial of *Daubert* motion because the "revenue reported in the customers' annual reports cited by [the expert] included sales of irrelevant products and services, and he failed to account for these irrelevant products and services").

This is not the first time that Mr. Dell's royalty base has been inappropriately overbroad. For example, in *Realtime Data LLC v. EchoStar Corp.*, 2018 U.S. Dist. LEXIS 202522 at *12, No. 6:17-cv-00084-JDL (E.D. Tex. Nov. 15, 2018), a *Daubert* motion was granted against Mr. Dell where his royalty base "stretche[d] far beyond the revenue generated by SSPPU" and instead included related services. *Id.* at *12. Mr. Dell "purport[ed] to tie this revenue to the SSPPU" when in fact he "include[d] nearly all revenue from Hughes's entire internet service provider (ISP) business as part of his royalty base." *Id.* The Court held that Mr. Dell's royalty base was inappropriate and granted defendants' *Daubert* motion with respect to the royalty base and certain conveyed sales. *Id.* at *14-15, 19.

To the extent that Correct Transmission argues that the royalty base calculated by Mr. Dell was limited by Nokia's financial records, a similar argument was rejected in *Realtime Data*, where the Court stated that "Plaintiff cannot merely seek to 'hide behind' [defendant's] sale model and claim that practical and economic necessity permit Plaintiff to conduct an EMVR analysis." *Id.* at *13. "On the contrary, a patentee must be reasonable (though may be approximate) when seeking to identify a patent-practicing unit, tangible or intangible, with a close relation to the patented feature." *Id.* Similarly, here, Mr. Dell could have at least attempted to apportion out the royalty

base where Correct Transmission was in possession of sales contracts, reports demonstrating units shipped specific to the Accused Products, and pricing lists, but failed to even attempt to do so.[6]

## V.    CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court exclude testimony regarding his royalty benchmarks and royalty base, or in the alternative, strike the following paragraphs from Mr. Dell's report: 22, 95, 98-99, 159-62, 192, 277-95, 303, 305, 311, 315-34, 345-48, 350-51, 353, 355-61, and 363-64.

Dated:  January 8, 2024

_/s/ Thomas W. Davison_

Deron R. Dacus (TX 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

John D. Haynes (GA 340599)
David S. Frist (GA 205611)
Sloane S. Kyrazis (GA 878240)
Nicholas T. Tsui (GA 982502)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
john.haynes@alston.com
david.frist@alston.com
sloane.kyrazis@alston.com
nick.tsui@alston.com

M. Scott Stevens (NC 37828)
Nicholas C. Marais (NC 53533)

---

[6] Mr. Dell's opinions regarding the royalty base are contained in paragraphs 22, 95, 98-99, and 364, and he should not be permitted to offer the opinions contained therein.

Erin Beaton (NC 59594)
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
scott.stevens@alston.com
nic.marais@alston.com
erin.beaton@alston.com

Thomas W. Davison (FL 55687)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
tom.davison@alston.com

Darlena Subashi (NY 5780747)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
darlena.subashi@alston.com

Katherine G. Rubschlager (CA 328100)
**ALSTON & BIRD LLP**
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
katherine.rubschlager@alston.com

Caleb J Bean (CA 299751)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
caleb.bean@alston.com

*Counsel for Defendant*
*Nokia of America Corporation*



**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served via e-mail on January 8, 2024 on all counsel who have consented to electronic service.

                                                  /s/ Thomas W. Davison

**CERTIFICATE OF CONFERENCE**

I hereby certify that Nokia has complied with the meet and confer requirements set forth in Local Rule CV-7(h). Counsel for Nokia met and conferred with counsel for Correct Transmission on January 5, 2024. Correct Transmission indicated that it is opposed to the relief sought in this motion.

                                                  /s/ Thomas W. Davison