████████████████████████

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Correct Transmission, LLC, | |
|     Plaintiff, | Case No. 2:22-cv-00343-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| NOKIA OF AMERICA CORPORATION | |
|     Defendant. | ███████████████ |

**NOKIA'S MOTION TO STRIKE AND EXCLUDE**
**CERTAIN OPINIONS OF DR. RICARDO VALERDI**

████████████████████████████████

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     LEGAL STANDARDS ............................................................................................ 1

III.    DR. VALERDI'S OPINIONS REGARDING THE DOCTRINE OF EQUIVALENTS SHOULD BE EXCLUDED.......................................................................................... 2

    A.    Dr. Valerdi's Boilerplate Allegations of Infringement Under the Doctrine of Equivalents Should be Stricken and Excluded ...................................................... 2

    B.    Dr. Valerdi's Allegations of Infringement Under the Doctrine of Equivalents For Element 1[c] of the '669 Patent Should be Stricken and Excluded........................ 3

IV.     DR. VALERDI'S OPINIONS REGARDING CERTAIN PRODUCTS ALLEGED TO INFRINGE THE '928 AND '669 PATENTS SHOULD BE EXCLUDED ...................... 6

    A.    Correct Transmission's Infringement Contentions Identified Evidence for Only a Small Subset of Products Related to the Accused Features.................................... 6

    B.    Nokia Provided Evidence Establishing that Certain Products Do Not Support the Accused Features of the '928 and '669 Patents ...................................................... 7

    C.    Dr. Valerdi Did Not Analyze Whether the Products Support the Accused Features and Ignores Nokia's Evidence That Certain Products Do Not .............................. 8

    D.    ████████████████████████████████

V.      DR. VALERDI'S OPINIONS REGARDING THE "PORT DEFINER MODULE" OF THE '928 PATENT SHOULD BE EXCLUDED ............................................................ 11

VI.     DR. VALERDI'S OPINIONS REGARDING MARKING SHOULD BE EXCLUDED 14

VII.    CONCLUSION........................................................................................................... 15

i

████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................................2, 12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)...................................................................................11, 12

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-cv-00033-JRG-RSP, 2016 U.S. Dist. LEXIS 196292 (W. D. Tex. Jan. 7,
  2016) ..............................................................................................................2, 3, 9, 10

*Gree, Inc. v. Supercell Oy*,
  No. 2:19-cv-0000-JRG-RSP, 2020 U.S. Dist. LEXIS 139310 (E.D. Tex. Aug. 5,
  2020) ........................................................................................................................14

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................................1

*Maxell, Ltd. v. Apple Inc.*,
  2020 U.S. Dist. LEXIS 248960 (E.D. Tex. Nov. 17, 2020) ...........................................5

*MercTec, LLC, v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)......................................................................................12

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC (B-Tek)*,
  671 F.3d 1291 (Fed. Cir. 2012)....................................................................................14

*Moore v. Ashland Chem., Inc.*,
  151 F.3d 269 (5th Cir. 1998) (en banc) .........................................................................2

*Personalized Media Communs., LLC v. Apple, Inc.*,
  No. 2:15-cv-01366-JRG-RSP, 2021 U.S. Dist. LEXIS 31667 (E.D. Tex. Feb. 20,
  2021) ........................................................................................................................11

*Robroy Indus. — Tex., LLC v. Thomas & Betts Corp.*,
  2017 U.S. Dist. LEXIS 54230 (E.D. Tex. April 10, 2017)............................................15

*Salas v. Carpenter*,
  980 F.2d 299 (5th Cir. 1992) .......................................................................................15

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
  2010 WL 457142 (E.D. Tex. Feb 5, 2010) .....................................................................3

██████████████████████████

*Uniloc 2017 LLC v. Google LLC*,
  No. 2:18-CV-00501-JRG-RSP, 2020 U.S. Dist. LEXIS 17453 (E.D. Tex. Feb. 2, 2020) .................................................................................................................13

*United Servs. Auto. Assoc'n v. PNC Bank N.A.*,
  No. 2:20-cv-00319-JRG-RSP, 2022 U.S. Dist. LEXIS 82529 (E.D. Tex. April 17, 2022) .................................................................................................................12

**RULES**

FED. R. EVID. 702 ................................................................................................ passim

FED. R. EVID. 703 ..............................................................................................................9

Local Patent Rule 3-6(a) ..............................................................................................1, 2

**TABLE OF EXHIBTS**

████████████████████████████████████

| Exhibit | Description |
|---|---|
| A | Addenda to the Opening Expert Report of Dr. Ricardo Valerdi (November 22, 2023) |
| B | Addendum A to the Opening Expert Report of Dr. Ricardo Valerdi (November 22, 2023) |
| C | Opening Expert Report of Dr. Ricardo Valerdi (November 22, 2023) |
| D | IPR2021-00984, Patent Owner's Corrected Preliminary Response, Paper 6 (September 1, 2021) ("Correct Transmission's POPR") |
| E | Rough Deposition Transcript of the Deposition of Dr. Ricardo Valerdi (January 4, 2024) |
| F | Correct Transmission's Infringement Contentions for U.S. Patent No. 7,768,928 |
| G | Correct Transmission's Infringement Contentions for U.S. Patent No. 6,876,669 |
| H | Correct Transmission's First Amended Infringement Contentions for U.S. Patent No. 7,768,928 |
| I | Correct Transmission's First Amended Infringement Contentions for U.S. Patent No. 6,876,669 |
| J | Nokia's 9th Supplemental Objections and Responses to CT's First Set of Interrogatory Requests (November 15, 2023) |
| K | Nokia's 6th Supplemental Objections and Responses to CT's Second Set of Interrogatory Requests (November 15, 2023) |
| L | Deposition Transcript of the Deposition of Alfred Nothaft (October 26, 2023) |
| M | Deposition Transcript of the Deposition of Richard Foote (November 15, 2023) |
| N | Addenda E1 to E3 of the Expert Report of Dr. Ricardo Valerdi, Excerpts Regarding U.S. Patent No. 7,768,928 (November 22, 2023) |
| O | Rebuttal Expert Report of Dr. Ricardo Valerdi (December 15, 2023) |
| P | Addendum A to the Expert Report of Dr. Ricardo Valerdi, Excerpts Regarding U.S. Patent No. 7,768,928 (November 22, 2023) |

## I.    INTRODUCTION

On November 22, 2023, Correct Transmission, LLC's expert, Dr. Ricardo Valerdi, provided a report regarding Nokia's alleged infringement of U.S. Patent Nos. 6,876,669 (the "'669 patent"); 7,127,523 (the "'523 patent"); 7,283,465 (the "'465 patent"); 7,768,928 (the "'928 patent"); 7,983,150 (the "'523 patent") (collectively, the "Asserted Patents"). Nokia seeks to strike and exclude four categories of opinions from Dr. Valerdi's report. First, Dr. Valerdi's conclusory, boilerplate allegations relating to the doctrine of equivalents should be excluded. Second, Dr. Valerdi's opinions that certain products infringe the '928 and '669 patents should be excluded because Dr. Valerdi admitted at his deposition he does not know if those products contain the accused features. Third, Dr. Valerdi's opinions that contradict the Court's construction of the "port definer module" claim term should be excluded. Finally, Dr. Valerdi's opinions based solely on conversations with his attorneys should be excluded.

## II.    LEGAL STANDARDS

An expert who is qualified may testify in the form of an opinion if the proponent demonstrates to the court that it is more likely than not that (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. FED. R. EVID. 702. Rule 702 imposes a "special obligation upon a trial judge" to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999). "[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Advisory Committee Note to FED. R. EVID. 702 (2023).

The reliability prong mandates that expert opinion "be grounded in the methods and

procedures of science and . . . be more than unsupported speculation or subjective belief." *Id*. (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993)); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) ("[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable."). Conclusory opinions unsupported by facts or data and based on no discernible principles and methods are not admissible under Rule 702. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-00033-JRG-RSP, 2016 U.S. Dist. LEXIS 196292, at *6 (W. D. Tex. Jan. 7, 2016). Further, the party tendering an expert bears the burden of establishing the admissibility of the expert's testimony and of persuading the court to allow the expert to testify. *Daubert*, 509 U.S. at 592 n.10; *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

## III.    DR. VALERDI'S OPINIONS REGARDING THE DOCTRINE OF EQUIVALENTS SHOULD BE EXCLUDED

### A.    Dr. Valerdi's Boilerplate Allegations of Infringement Under the Doctrine of Equivalents Should be Stricken and Excluded

For each limitation of the asserted claims (except for element 1[c]), Dr. Valerdi alleged, in boilerplate fashion, that "[t]o the extent that this step is not literally present in the Accused Device, the Accused Device would nevertheless infringe under the doctrine of equivalents, because the Accused Device performs a step that is, if not literally the step recited in the claim, then equivalent to it."[1] Dr. Valerdi repeated the same in his addenda addressing source code: "To the extent that this step is not literally present in the Accused Nokia Devices, the Accused Nokia Devices would

---

[1] *See* Ex. A (Valerdi Addenda) at Add. B1 at 11, 14, 24, 29, 36; Add. B2 at 10, 14, 24, 29, 36; Add. B3 at 11, 14, 24, 29, 35; Add. C1 at 5, 12, 16, 26, 31, 43, 46, 58, 66, 75; Add. C2 at 7, 14, 18, 28, 33, 48, 52, 66, 74, 83; Add. C3 at 7, 17, 21, 31, 36, 54, 58, 70, 78, 87; Add. D1 at 6, 28, 31, 34, 40, 50, 64, 66; Add. D2 at 7, 27, 30, 33, 40, 50, 62, 64; Add. D3 at 7, 26, 29, 32, 39, 49, 60, 62; Add. E1 at 17, 22, 31, 45, 54, 70, 79, 84, 101; Add. E2 at 18, 24, 34, 47, 55, 71, 80, 85, 101; Add. E3 at 18, 23, 32, 45, 54, 71, 80, 86, 102; Add. F1 at 12, 25, 37, 43, 73, 78, 88; Add. F2 at 13, 27, 39, 45, 77, 82, 93; Add. F3 at 15, 29, 41, 47, 80, 85, 96).

████████████████████████████████████████████████

nevertheless infringe under the doctrine of equivalents, because the Accused Nokia Devices perform a step that is, if not literally the step recited in the claim, then equivalent to it."[2] For the preambles of each of the asserted independent claims, Dr. Valerdi again states the same: "This element, if construed as a limitation, is present literally and under the doctrine of equivalents in the Accused Device."[3] In his report, Dr. Valerdi also attempts to preserve doctrine of equivalents for every single element of each of the Asserted Claims through a boilerplate statement:

> Further, to the extent Nokia asserts that each claim limitation as presented below and in my various Addenda [is not present], it is my opinion that each claim is infringed through at least the doctrine of equivalents. The equivalences demonstrated for each claim element support that the Nokia Routers with the infringing features as configured through Nokia's source code embodies the inventive concept of the patented technology.[4]

Dr. Valerdi provides no additional support for his conclusory boilerplate statements, with one exception (discussed separately below). Dr. Valerdi's conclusory statements are not supported by any facts or data, nor are they based discernible principles or methods, and as such are not admissible under Rule 702. *See Genband*, 2016 U.S. Dist. LEXIS 196292, at *6. The Court should therefore strike Dr. Valerdi's conclusory statements regarding the doctrine of equivalents (cited above), and Dr. Valerdi should be prevented from testifying to the jury regarding the same. *Id.; see also Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 457142, at *7–9 (E.D. Tex. Feb 5, 2010).

> **B.  Dr. Valerdi's Allegations of Infringement Under the Doctrine of Equivalents For Element 1[c] of the '669 Patent Should be Stricken and Excluded**

For element 1[c] of the '669 patent (and only that element), Dr. Valerdi asserts:

---

[2] *See* Ex. B (Valerdi Addendum A) at ¶¶ 2417, 2429, 2445, 2456, 2466, 2484, 2500, 2511, 2529, 2543, 2588, 2604, 2623, 2633, 2646, 2658, 2669, 2678, 2685, 2691, 2699, 2707, 2717, 2726, 2732, 2749, 2757, 2769, 2786, 2800, 2814, 2822, 2831, 2847, 2863, 2874, 2892, 2905, 2915, 2928, 2956, 2963, 2972, 2980.
[3] Ex. A (Valerdi Addenda) at Add. B1 at 1; Add. B2 at 1; Add. B3 at 1; Add. C1 at 1, 32; Add. C2 at 1, 35; Add. C3 at 1, 37; Add. D1 at 1, 35; Add. D2 at 1, 34; Add. D3 at 1, 33; Add. E1 at 1, 54; Add. E2 at 1, 55; Add. E3 at 1, 54; Add. F1 at 1, 44; Add. F2 at 1, 46; Add. F3 at 1, 48.
[4] Ex. C (Valerdi Rpt.) at ¶ 120.



As noted in Nokia's pending motion for summary judgment (*See* Dkt. 105), Correct Transmission disclaimed the very subject matter that Dr. Valerdi now seeks to recapture during an *inter partes* review proceeding. *See* Ex. D ("Correct Transmission's POPR") at 40–46. In the IPR, Correct Transmission differentiated a reference called "Sourani" by arguing that it disclosed a decision to fragment that "is predetermined and entirely ***independent*** of receiving a higher priority fragment," as opposed to the claim limitation that required fragmenting "responsive to receiving the second datagram." *Id.* at 42. Similarly, Correct Transmission distinguished a reference called "Olsson" by arguing that the '669 patent "substantiates and explains an embodiment of this decision to divide by illustrating that the fragmenter 58 is able to determine 'on the fly' ***whether*** and how to fragment a given packet." *Id.* at 52. Correct Transmission added that the "'669 Patent touts that the decision as to whether a patent should be fragmented and in what manner should be made 'on the fly' and that prior art taught fixed fragmentation decided 'before operation.'" *Id.* at 52–53. Correct Transmission then differentiated Olsson from the claim of the '669 patent by explaining that "Olsson directly teaches that the packets are fragmented ***and then queued***, as opposed to fragmenting packets in response to receiving a second datagram." *Id.* at 53. In differentiating the "Olsson" reference, Correct Transmission went on to define two different methodologies of fragmenting as "queued fragmenting" (as taught by Olsson) and "responsive fragmenting" (as taught by the '669 patent). *Id.* at 53–54. Correct Transmission then argued that

4

█████████████████████████████████████████████

prior art reference "Olsson clearly does not teach responsive fragmenting and instead teaches 'queued' fragmenting." *Id.* Correct Transmission thus disclaimed "queued fragmenting."

Correct Transmission thus touted the importance of claim 1[c]'s "responsive" requirement—namely that it requires the system to determine "on the fly" whether to fragment. Ex. D (Correct Transmission's POPR) at 52–53.

Dr. Valerdi now takes the position that the claim does not require it to determine "on the fly," but rather the decision to fragment is merely responsive to having ████████████ ████████████████████ Ex. C (Valerdi Rpt.) at ¶ 137. That is fundamentally a contrary position, and Dr. Valerdi should not be permitted to offer testimony that attempts to recapture claim scope that it previously disclaimed.



███████████████████████████████ Because Correct Transmission cannot recapture this broad interpretation of the claim, Dr. Valerdi's testimony on doctrine of equivalents relating to element 1[c] of the '669 patent should be excluded. *Maxell, Ltd. v. Apple Inc.*, 2020 U.S. Dist. LEXIS 248960, at *87 (E.D. Tex. Nov. 17, 2020) (explaining that '[w]hether prosecution history estoppel applies is a question of law" and that this "Court is responsible for deciding disputed questions of law, and the Federal Circuit has consistently disfavored reliance on expert testimony as the basis for legal conclusions").

████████████████████████████████████████████

## IV.    DR. VALERDI'S OPINIONS REGARDING CERTAIN PRODUCTS ALLEGED TO INFRINGE THE '928 AND '669 PATENTS SHOULD BE EXCLUDED

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████    Dr. Valerdi admitted during his deposition that he has no information in his report that contradicts these facts. As discussed below, his opinions regarding these products should be excluded.

### A.    Correct Transmission's Infringement Contentions Identified Evidence for Only a Small Subset of Products Related to the Accused Features

Correct Transmission served its Preliminary Infringement Contentions on November 30, 2022, which included claim charts regarding Nokia alleged infringement of the '928 and '669 patents. Specifically, Correct Transmission accused the following features and product lines of infringing the '928 and '669 patents:

| Patent | Accused Feature | Accused Products |
|--------|-----------------|------------------|
| '928 | The combination of two distinct features: LAG-based Maintenance End Points ("MEPs") and Port-based MEPs, that allegedly perform ethernet connectivity fault management ("ETH-CFM") | • 7705 Service Aggregation Router <br> • 7210 Service Access System <br> • 7250 Interconnect Router <br> • 7450 Ethernet Service Switch <br> • 7750 Service Router <br> • 7950 Extensible Routing System <br> • Virtual Service Router ("VSR") |
| '669 | Link Fragmentation and Interleaving | |

*See generally* Exs. F and G (CT's Prelim. Inf. Contentions).

On June 30, 2023, Correct Transmission served its First Amended Infringement Contentions where, with limited exception, it accused the same products lines and features of infringing the '928 and '669 patents.[5] *See generally*, Exs. H and I (CT's Amend. Inf. Contentions).

---

[5] Correct Transmission did not serve amended infringement charts for the Virtualized Service Router.

6

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████ In

its contentions, Correct Transmission fails to cite or rely on any documents specific to the 7210,

7250, and 7705 products (for the '928 patent) and 7210, 7250, 7705, and 7950 (for the '669 patent)

that establish that these products support the accused functionality.

**B.      Nokia Provided Evidence Establishing that Certain Products Do Not Support the Accused Features of the '928 and '669 Patents**

During discovery Nokia plainly disclosed that ████████████████████████████

████████████████████████████████████████ did not contain the features Correct

Transmission was accusing of infringement.

First, with respect to the '928 patent, Nokia's response to an interrogatory stated that ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███

Second, with respect to the '669 patent, ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

7

███████████████████████████████████████████████████

███████████████████████████████████████████ In another interrogatory

response, ████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ Correct Transmission never corrected this error.

Finally, Nokia's corporate representatives repeatedly testified under oath ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████

**C.      Dr. Valerdi Did Not Analyze Whether the Products Support the Accused Features and Ignores Nokia's Evidence That Certain Products Do Not**

Despite clear evidence █████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Dr. Valerdi opined in his

infringement report that the '928 and '669 patents are infringed by each of the Accused Products.

*See* Ex. C (Valerdi Rpt.) at ¶¶ 46, 48, 112, 116, 123, 305. Dr. Valerdi acknowledges that he

███████████████████████████████████████████████████

███████████████████████████████████████ *See* Ex. C (Valerdi Rpt.) at 112. Yet,

he opines that ████████████████████████████████████████████

████████ *See id.* (emphasis added).

At his deposition, Dr. Valerdi was asked whether he has any specific analysis in his report

to rebut Nokia's evidence that 1███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

8

███████████████████████████████████████████

████████ In response to these questions, Dr. Valerdi unequivocally testified that he does not have anything in his report to rebut Nokia's evidence and did not undertake any analysis to dispute it. *See id.*

D.    **Dr. Valerdi's Opinion that the** ███████████████████ ████████████████████████████████████████████ **Are Unreliable and Should be Excluded**

Dr. Valerdi's opinion regarding Nokia's infringement of the '928 and '669 patents with respect to the products that unequivocally do not practice the accused features does not rest on facts or data that "experts in the particular field would reasonably rely on," rendering Dr. Valerdi's opinion flawed and unreliable. FED. R. EVID. 703. As this Court has recognized, "an expert may not simply assume that all [] product versions are alike." *See Genband,* 2016 U.S. Dist. LEXIS 196292, at *7. But that is exactly what Dr. Valerdi has done here.

Specifically, Dr. Valerdi opined that "[e]ach of the Accused Products carries out the infringing features in an identical manner." Ex. C (Valerdi Rpt.) at ¶ 112. But he provides no analysis for why that is true. Instead, he provided contradictory testimony that he "understand[s] that some products are not enabled to carry out features." *Id.* ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

Dr. Valerdi was then presented with Nokia's corporate testimony regarding these products

████████████████████████████████████████████████████

that are simply incapable of performing the accused features, and was asked whether he had any *facts* he could present at trial to dispute that testimony. He testified that he did not. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

Dr. Valerdi's conclusory assertion thus does not rely on any facts or evidence establishing that the Accused Products are all alike, and instead ignores clear evidence that his assumption is wrong. As described above, Nokia's interrogatory responses, corporate testimony, and technical documentation makes clear that these products do not support the features accused of infringing the '928 or 669 patents. Dr. Valerdi's failure to analyze, or otherwise rely on documentation establishing, whether these product lines support the features accused of infringing the '928 and '669 patents is fatal to his opinions.

When an expert offers unsupported and unreliable opinions, it is this Court's role as a gatekeeper to exclude such opinions. *See, e.g.*, *Genband*, 2016 U.S. Dist. LEXIS 196292, at *6 (holding that "conclusory opinions unsupported by 'facts or data' and based on no discernable 'principles and

10

███████████████████████████████████████████████

methods' are not admissible under Fed. R. Evid. 702"); *Personalized Media Communs., LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 U.S. Dist. LEXIS 31667, at * 23 (E.D. Tex. Feb. 20, 2021) (holding that "[m]erely stating a conclusory assumption not predicated on evidence is inadmissible").

Because Dr. Valerdi's assumptions are not predicated on any evidence, ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

## V.   DR. VALERDI'S OPINIONS REGARDING THE "PORT DEFINER MODULE" OF THE '928 PATENT SHOULD BE EXCLUDED

Claim 1 of the '928 patent requires "a port definer module." *See* Dkt. 2-4 ('928 patent at cl. 1) (emphasis added). The Parties agreed to the following construction:

| TERM | AGREED CONSTRUCTION |
|---|---|
| "port define module" <br><br> ('928 patent: claim 1) | Means Plus Function. <br><br> <u>Function</u>: to designate any one physical link of said logical link as required for examining of said designated physical link of said logical link, said designation comprising forwarding at least one CFM message to said logical link in such a way as to be forwarded over said logical link specifically via said designated physical link, said designation being available for each physical link separately, thereby allowing examination according to requirement of any physical link of said logical link. <br><br> <u>Structure</u>: A programmed processor based electronic circuit programmed with algorithm instructions generally described as the algorithms in Figs. 4 and 7 and the specification at 10:65 – 11:28 and 13:15 – 13:67, and equivalents thereof. |

*See* Dkt. 83 at 10. As such, the construction requires, among other things, the algorithm in Fig. 7 of the '928 patent, which discloses that the "port definer module" is a component of a maintenance entity. *See* Dkt. 2-4 ('928 Patent) at Fig. 7.

The Court is the sole arbiter of claim construction disputes. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's

construction to a jury."). As such, an expert is ***bound*** by the claim construction set forth by the

Court. *See id.* Under Federal Circuit precedent, "expert testimony [that] ignore[s] the court's claim

construction 'is irrelevant to the question of infringement' and is inadmissible under *Daubert.*"

*United Servs. Auto. Assoc'n v. PNC Bank N.A.*, No. 2:20-cv-00319-JRG-RSP, 2022 U.S. Dist.

LEXIS 82529, at *20 (E.D. Tex. April 17, 2022) (quoting *MercTec, LLC, v. Johnson & Johnson*,

664 F.3d 907, 913 (Fed. Cir. 2012)).

As shown below, Figure 7 shows that the claimed port definer module is a component of a

maintenance entity ("ME"). Examples of ME's include: a maintenance end-point ("MEP"), a

maintenance entity group ("MEG"), and an intermediate point ("MIP"). Dkt. 2-4 ('928 Patent) at

1:28-33, 3:18-20, claim 3.



The corresponding text and surrounding claim language confirms that that the claimed port

definer module is a component of a ME.  The '928 Patent states:

> Reference is now made to FIG. 7 which depicts an exemplary network node 50
> which is operable in a CFM domain, according to one embodiment of the present
> invention. The **depicted network node 50, which is preferably a MEP**, is
> configured for allowing the examination of a designated link in a LAG by allowing
> the receiving and forwarding of CFM messages via the designated link, as described
> above.
> **The network node 50 comprises a port definer module 51**, which is preferably
> implemented on a processor based electrical circuit.
> …

12

███████████████████████████████████████████

> **In another embodiment of the present invention, the network node 50 is an MIP.**

Dkt. 2-4 ('928 Patent) at 13:15-40 (emphasis added) Thus, the only examples in the specification are that the port definer module is a component of a ME.

Despite the structure of Figure 7 requiring the port definer module be a component of a ME, Dr. Valerdi points to two separate MEs of different types that purportedly perform the functions of the port definer module when used together in a particular configuration. For example, Dr. Valerdi opines:

> The Accused Product can be configured to comprise a combination of LAG-based maintenance entity points (MEPs) and port-based MEPs performing the functions of the port definer module. For example, the LAG-based MEP selects a single member port to forward ETH-CFM packets and Port-based MEPs validate the individual member ports.

Ex. C (Valerdi Rpt.) at ¶¶ 311-312; *see also* Ex. B at ¶ 2755. Under Dr. Valerdi's opinion, the port definer module is comprised of multiple MEs, rather than a component of a single ME as required by the structure of Figure 7.

Dr. Valerdi's opinion directly contradicts the Court's Claim Construction Order, which construed the term "port definer module" to require the structure of Fig. 7. At his deposition, Dr. Valerdi unequivocally testified that his theory required that two MEs were needed to perform the function (i.e., the combination of LAG-based MEPs and port-based MEPs). *See* Ex. E (Valerdi Rough Tr.) at 76:5-78:20. Figure 7 of the '928 patent and the relevant portions of the specification plainly show that a port definer module *is a component* of a single ME. There is no embodiment of the '928 patent that discloses a port definer module being comprised of two MEs. As such the '928 patent is limited to the structures disclosed in the specification, i.e., the port definer module cannot comprise two Mes. *See Uniloc 2017 LLC v. Google LLC*, No. 2:18-CV-00501-JRG-RSP, 2020 U.S. Dist. LEXIS 17453, *7 (E.D. Tex. Feb. 2, 2020) ("when it applies, § 112, ¶ 6 limits the

█████████████████████████████████████████

scope of the functional term 'to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof.'"); *Mettler-Toledo, Inc. v. B-Tek Scales, LLC (B-Tek)*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) ("If a patentee chooses to disclose a single embodiment, then any means-plus-function claim limitation will be limited to the single disclosed structure and equivalents thereof.").

Accordingly, Dr. Valerdi's opinion that the combination of LAG-based MEPs and Port-based MEPs comprise a port definer module is contrary to the Court's construction and should be excluded. *See Gree, Inc. v. Supercell Oy*, No. 2:19-cv-0000-JRG-RSP, 2020 U.S. Dist. LEXIS 139310, at *4 (E.D. Tex. Aug. 5, 2020) ("when an expert's testimony is based on an incorrect understanding of the claim construction, the Court must disregard the testimony") (internal citations and quotations omitted). Thus, the Court should specifically exclude Dr. Valerdi's opinions set forth in paragraphs 311, 316, and 319 of his report (highlighted in Ex. C) and paragraphs 2746, 2748, 2755, 2766, 2768, 2778, 2780, 2798 of Addendum A (attached as Ex. P), as well as the orange highlighted potions in Exhibits E1-E3 (attached as Ex. N), and preclude him from testifying regarding such opinions.

## VI.   DR. VALERDI'S OPINIONS REGARDING MARKING SHOULD BE EXCLUDED

Dr. Valerdi's opinion regarding the sale of the CM-100 products is unreliable and should be excluded. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████    ████████████

███████████████████████████████████████████

███████████████████████████████   In fact, Dr. Valerdi admits that he hasn't seen

██████████████████████████████████

███████████████████████████████████ And, when asked at his deposition about the basis for his opinions in paragraph 582-583, Dr. Valerdi unequivocally testified that "[he] was informed by Counsel." *See* Ex. E (Valerdi Rough Tr.) at 124:2-125:1.

Dr. Valerdi's opinion is thus in direct violation of Rule 702, as it is not based on any identifiable facts or data or reliable methodology and does nothing more than repeat the conclusions of Correct Transmission's attorneys. Courts regularly bar experts from testifying in this manner. *See, e.g.*, *Robroy Indus. — Tex., LLC v. Thomas & Betts Corp.*, 2017 U.S. Dist. LEXIS 54230, *30 (E.D. Tex. April 10, 2017) ("The danger of allowing an expert to simply summarize evidence provided to the expert by the party that retained him is, of course, that the expert will become a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted "expertise.""); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."). ████████████████████████████████

████████████████████████████████████████████████

## VII.    CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court grant this motion.

DATED: January 8, 2024

Respectfully submitted,

BY: */s/ Thomas W. Davison*

Deron R. Dacus (TX Bar No. 00790553)
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543
Email: ddacus@dacusfirm.com

15

████████████████████████████████

John D. Haynes (GA Bar No. 340599)
David Frist (GA Bar No. 205611)
Sloane Kyrazis (GA Bar No. 878240)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: john.haynes@alston.com
Email: david.frist@alston.com
Email: sloane.kyrazis@alston.com

Thomas W. Davison (FL Bar No. 55687)
ALSTON & BIRD LLP
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333
Email: tom.davison@alston.com

M. Scott Stevens (NC Bar No. 37828)
Nicholas C. Marais (NC Bar No. 53533)
Erin Beaton (NC Bar No. 59594)
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: scott.stevens@alston.com
        erin.beaton@alston.com

Darlena Subashi (NY 5780747)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
darlena.subashi@alston.com
jacob.young@alston.com

Katherine G. Rubschlager (CA Bar. No. 328100)
ALSTON & BIRD LLP
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
Email: katherine.rubschlager@alston.com

*Attorneys for Defendant Nokia of America Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served electronically on January 8, 2024, on all counsel who have consented to electronic service.

/s/ *Thomas W. Davison*
Thomas W. Davison

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that Nokia conferred with opposing counsel via MS teams on January 5, 2023, through a lead-local conference. Correct Transmission indicated they oppose the motion.

/s/ *Thomas W. Davison*
Thomas W. Davison

17