IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CORRECT TRANSMISSION, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-00343-JRG-RSP |
| | § | |
| NOKIA OF AMERICA CORP., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court is Nokia's Motion to Exclude Mr. Dell's Opinions and Testimony (Dkt. No. 111.). After consideration, the Court **GRANTS IN PART** and **DENIES IN PART** the motion as provided below.

**I.   BACKGROUND**

This case addresses the infringement and validity of five patents: U.S. Patent No. 6,876,669, U.S. Patent No. 7,127,523, U. S. Patent No. 7,283,465, and U.S. Patent No. 7,983,150. (Dkt. No. 1.) Mr. Dell provides damages opinions as to all asserted patents. (Mot. at 1.)

**II.   APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

1

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461

(5th Cir. 2002).

### III.     ANALYSIS
#### A.   CHEETAH OMNI LICENSE

Nokia argues that any running royalty rate derived from the Cheetah Omni License should be excluded as unreliable. (Mot. at 7.) Nokia contends the license in question is the result of a settlement and includes conflicting statements regarding what the settlement amount represented and what an appropriate royalty rate might be. (Mot. at 7-8.) In particular, recital D provides that one of the settling parties believed the settlement represents a 6% royalty but the other party disagrees. (*Id.*) Nokia contends that Mr. Dell's relies on these statements and that such a use of hearsay is impermissible. (*Id.* at 8.) Indeed, Nokia cites *Oyster Optics, LLC v. Alcatel-Lucent USA Inc.,* No. 2:18-cv-00478-JRG (E.D. Tex. June 24, 2020) where this court previously excluded evidence regarding Recitals "D" and "E" of the license. (*Id.*)

The Court has already excluded argument, evidence, or suggestion regarding recital D, because it is inadmissible hearsay, in a related case. (*See Smart Path Connections LLC v. Nokia of America Corp. et al*, No. 2:22-cv-00296, Dkt. No. 230 at 3.) Recital E was not excluded as it was made by a predecessor in interest of Nokia.  While CT correctly argues that experts may rely upon hearsay and may share it with the jury under F.R.E. 703, that is true "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Here the Court finds that the prejudicial effect of Recital D to Nokia exceeds its very slight probative value. Nokia can have no insight into the expert opinion referred to in Recital D.  On the other hand, there are other terms in the license that can be reasonably evaluated by damages experts to assist the jury in determining a reasonable royalty in this case.

Accordingly, Mr. Dell will be permitted to rely upon the Cheetah Omni license but may not in any way refer to the contents of Recital D in doing so.

### B. NETWORKS[3] DAMAGES MODEL

Nokia next argues Mr. Dell's Networks[3] damages model should be excluded. (Mot. at 8-9.) Nokia contends Mr. Dell derives a royalty rate benchmark from a "sensitivity analysis" untethered from the asserted patents. (*Id.*) This "sensitivity analysis" originates from an unconsummated set of negotiations between Orckit and Networks[3] involving not just the patents-in-suit but a larger portfolio as well. (*Id.* at 3.) Nokia contends that such hearsay untethered to the patents or technology at issue in the case is unreliable and should be excluded for this reason. (*Id.* at 8-9.) Additionally, Nokia contends that Mr. Dell's analysis of the benchmark is itself unreliable. (*Id.* at 9-10.) In particular, Nokia complains that Mr. Dell opines that 4 to 7 of the patents in the Orckit portfolio drive the entire value of the portfolio, but "fails to take into consideration that other patents from the Orckit Portfolio have also been selected for assertion of infringement," in particular 4 other patents that Mr. Dell evaluates in a companion case against Nokia. (*Id.*)

CT defends Mr. Dell's use of the Networks[3] damages model by arguing that it is merely a benchmark, and the difference in which patents drive the value is accounted for by different circumstances. (Opp. at 5-9.) CT argues that Mr. Dell acknowledges the Networks[3] rate was never consummated, and properly considers it not as an established rate but as a "benchmark from which to negotiate" since the parties would have been aware of it. (*Id.* at 5-7.) CT further contends that while hearsay, the rate is hearsay that experts are permitted to rely upon. (*Id.*) Lastly, CT responds to Nokia's concern regarding Mr. Dell's portfolio valuation, arguing that which patents drive value varies by market segment. (*Id.* at 8-9.)

The Court agrees with Nokia, Mr. Dell's use of the Networks[3] damages model is excluded. The Networks[3] damages model is inadmissible hearsay. While experts may rely on hearsay, that permission does not extend here, where the prejudicial effect outweighs any slight probative value. The damages model is clearly the product of some other third-party who performed some unknown

4

analysis with unknown expertise to develop those opinions. Permitting Mr. Dell to reference and rely upon such opinions is not helpful to the jury.

This is distinct from the instance where an expert is permitted to consider a rate offered by the patent owner. There, the offered rate is presumed to be known and thus arguably likely to be considered as part of the hypothetical negotiation. *See Solas OLED Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912868, at *2 (E.D. Tex. May 30, 2022).

With reference to the Networks[3] damages model or the proposed portfolio excluded, the Court finds Nokia's complaint as to double counting moot.

### C.  INCREMENTAL PROFIT PREMIUMS

Nokia also complains of Mr. Dell's reliance on the technical apportionment analysis performed by Dr. Cole. (Mot. at 10-11.) Nokia's complaint largely tracks its separate *Daubert* motion against Dr. Cole. The Court finds that Nokia's concern here is addressed on that Motion.

### D.  ROYALTY BASE OPINIONS

Last, Nokia complains that Mr. Dell includes unaccused products and services in his royalty base. (Mot. at 12-14.) Nokia contends this contravenes the entire market value rule for which Mr. Dell has performed no analysis. (*Id*. at 12.) Nokia contends Mr. Dell used the same royalty base for each asserted patent but admitted not every accused product is accused of infringing each of the asserted patents and he did not apportion the revenue for specific models from certain product lines. (*Id*. at 12-13.) Additionally, Nokia contends Mr. Dell uses product family sales data without apportioning down to only accused members of the family, though Nokia's data does not allow such. (*Id*. at 5.) Nokia has similar concerns regarding services. (*Id*.)

In response, CT argues that granting Nokia's request would be to allow Nokia to benefit from its own discovery failure. (Opp. at 12.) CT contends Nokia's corporate representative confirmed the figures relied on by Mr. Dell reflected what Nokia had earned on the accused

5

instrumentalities. (*Id*. at 12-13.) CT contends that the declaration of the corporate witness Nokia attaches to its motion cannot change things now. (*Id*. at 14.) CT concludes its opposition requesting that if the Court is inclined to exclude Mr. Dell's opinion, the Court should instead compel Nokia to provide revenue figures that disaggregate products and permit Mr. Dell to amend his report. (*Id*. at 14-15.)

Nokia responds to this discovery request arguing it is raised too late and never before raised in a motion to compel or otherwise. (Reply at 4-5.)

CT has a persuasive argument that it reasonably relied upon the data that Nokia produced as corresponding to the accused instrumentalities. Nokia also admits even now that it cannot produce more granular data. Accordingly, the Court will not order CT at this late date to go back to the drawing board. Nokia can raise its criticisms of the royalty base through its own witnesses.

### IV.    CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Nokia's motion to strike as provided above.

**SIGNED this 26th day of March, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE