IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CORRECT TRANSMISSION, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-00343-JRG-RSP |
| | § | |
| NOKIA OF AMERICA CORP., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court is Nokia's Motion to Strike and Exclude Portions of the Expert Report of Dr. Ricardo Valerdi (Dkt. No. 112.). After consideration, the Court **GRANTS-IN-PART and DENIES-IN-PART** the motion as provided below.

### I. BACKGROUND

This case addresses the infringement and validity of five patents: U.S. Patent No. 6,876,669, U.S. Patent No. 7,127,523, U. S. Patent No. 7,283,465, and U.S. Patent No. 7,983,150. (Dkt. No. 1.) Dr. Valerdi provides infringement opinions as to all asserted patents. (Mot. at 1.)

### II. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

1

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461

(5th Cir. 2002).

### III.   ANALYSIS

#### A.   DOCTRINE OF EQUIVALENTS

Nokia argues that Dr. Valerdi's doctrine of equivalents arguments are conclusory and supported by no analysis. (Mot. at 2-3.) Nokia notes Dr. Valerdi merely provides that if the Accused Devices do not infringe literally, they do under the doctrine of equivalents by copying a single sentence as to each limitation but with no particularized analysis. (*Id*. at 3.) Nokia further contends Dr. Valerdi's doctrine of equivalents argument as to element 1[c] of the '669 patent should be stricken. (*Id*. at 3-4.) Nokia repeats the prosecution history estoppel argument it raised in its motion for summary judgment. (*Id*.)

CT responds by referring back to its opposition to Nokia's motion for summary judgment of no infringement under doctrine of equivalents where CT argued these opinions were supported.[1] (Opp. at 2-3.)

The Court finds that Dr. Valerdi has not presented a valid doctrine of equivalents argument as his statements are entirely conclusory with no analysis. As such, the Court orders all reference to the doctrine of equivalents stricken from Dr. Valerdi's expert report and associated material except as to element 1[c] of the '669 patent. For the reasons provided in the Court's report and recommendation on Nokia's motion for summary judgment, the Court does not find prosecution history estoppel is grounds to, at this stage, decide infringement under the Doctrine of Equivalents.

#### B.   INFRINGEMENT BY CERTAIN PRODUCTS

Nokia contends that the 7705, 7210, 7250, and VSR product lines do not support features accused of infringing the '928 patent, and similarly the 7210, 7250, and 7950 product lines do not

---

[1] The Court does not accept that this is a proper method of briefing. The Local Rules provide a clear set of page limits and instruction that the party's arguments need to be included in the brief and not other materials. *See* Local Rule CV-7(a); Local Rule CV-7(d) ("The response and any briefing shall be contained in one document."). This attempt to incorporate arguments by reference is not well taken and under the Local Rules need not be considered.

support features accused of infringing the '669 patent. (Mot. at 6.) Nokia contends Dr. Valerdi concedes this much and thus opinions regarding these products should be excluded. (*Id*.)

In support of these contentions, Nokia first argues that CT's infringement contentions contain a significant mismatch between the products included and the products that the supporting evidence actually addresses. (*Id*. at 6-7.) Here Nokia contends that, where the '928 patent charts discuss the 7210, 7250, and 7705 products they cite documents concerning the 7750, 7450, and 7950 products' capabilities. (*Id*. at 7.) Likewise, where the '669 patent charts discuss the 7210, 7250, and 7950 products, they discuss the 7450, 7750, and VSR capabilities. (*Id*.)

Nokia next contends that it disclosed that the accused products did not contain the features accused of infringement (*Id*.) Nokia argues that its interrogatory responses and corporate representative repeatedly informed CT that the accused products were incorrect. (*Id*. at 7-8.)

Nokia contends Dr. Valerdi ignores this evidence, even acknowledging "some products are not enabled to carry out features, such as the Ethernet CFM feature…" while providing "[e]ach of the Accused Products carries out the infringing features *in an identical manner*." (*Id*. at 8-9 (emphasis in original).) Nokia points to Dr. Valerdi's deposition alleging he "unequivocally testified that he does not have anything in his report to rebut Nokia's evidence. And did not undertake any analysis to dispute it." (*Id*.)

Nokia argues that in light of this lack of evidence and strong evidence to the contrary, any opinions Dr. Valerdi could provide as to infringement would be entirely conclusory and should be stricken under *Daubert*. (*Id*. at 9-11.)

CT responds that Nokia has not shown any defect in Dr. Valerdi's methodology. (Opp. at 3-4.) CT first faults Nokia for raising this argument under a motion to strike rather than a summary judgment. (*Id*.) CT further defends Dr. Valerdi by arguing that he relies on the premise that all

4

products operate based on the source code provided in the parties' Stipulation regarding representative Source Code. (*Id*. at 3.) For example, CT points to Dr. Valerdi's report regarding the '669 Patent that "[r]eferecnes to source code will primarily be to Nokia's TiMOS_22_2_R2 which is representative of the accused functionality as noted in the Stipulation" and similarly regarding the '928 Patent. (*Id*.) CT contends "Dr. Valerdi's opening report contains more than 1,200 pages of analysis of the source code, with explanation that the code is representative of all code versions produced by Nokia." (*Id*. at 3-4.) CT contends that Dr. Valerdi also supports his opinions with "Screenshot showing MLPPP Link Fragment interleaving (LFI) supported by the Accused Device," citing one of the products at issue. (*Id*. at 4.) CT further points to where Dr. Valerdi cites "screenshot showing that the accused 7705 SAR-H Service Aggregation Router supports Ethernet OAM and CFM capabilities, and only relies on the 7450, 7750, 7950, and VRS guides to explain the OAM and CFM capabilities." (*Id*.)

In reply, Nokia contends CT misrepresents the parties' Source Code Stipulation. (Reply at 2.) Nokia contends the stipulation relates to source code not products. (*Id*.) Nokia contends the parties stipulated that a particular version of different code bases would be representative of that code base. (*Id*.) Nokia contends this stipulation does not extend to providing that particular products use particular code bases. (*Id*.)

Additionally, Nokia contends that CT's summary judgment framing is misleading. (*Id*.) Nokia contends the issue is what product perform accused features, not what features infringe. (*Id*.)

*Daubert* is not the appropriate format to dispute what products implement what features. Only if the moving party can show an expert's opinion on such a subject is unsupportable, such as being based on an unreliable methodology, can *Daubert* be an appropriate format to exclude such

an opinion. As such, the Court's analysis is focused exclusively on how Dr. Valerdi supports his opinion that certain products include certain features.

The Court first turns to the parties' stipulation. The stipulation provides that "[f]or the purposes of [the Asserted Patents], the Parties stipulate that for accused products that use [CSA, TiMOS-SAS, or TiMOS] software, [a particular release] is representative…" (*See* 142-2 at 2-3.)

Thus, Dr. Valerdi infringement opinions based on an analysis of source code will require both an analysis of the source code and a demonstration of what products, services, or otherwise implement that source code.

In support of the latter, CT's opposition points the Court to the source code stipulation, which does not provide that any particular product uses any particular source code, and two screen shots. (*See* Opp. at 4.) Reviewing the screenshot on page 8 of Dr. Valerdi's Addendum B provides "interleave" is supported on "all 7210 SAS platforms." (*See* Dkt. No. 142-2 at 8.) While this is cited only in the preamble rather than the substantive discussion of infringement, the Court finds this is sufficient to survive *Daubert*. Nokia documentation providing that certain platforms support the accused feature, here interleave, is a permissible basis for Dr. Valerdi to opine that the product in question practices that feature according to a source code Dr. Valerdi believes is the basis for that feature. The Court finds that CT's similar showing as to the '998 patent is likewise sufficient.

While CT has only provided the Court with the two examples that do not cover several of the products at issue, Nokia does not argue that this is in any way not representative. Thus, the Court finds Nokia has identified no basis to exclude Dr. Valerdi's opinions on this count.

### C. "PORT DEFINER MODULE"

Nokia's next argument relates to the agreed construction of "port definer module" and how Dr. Valerdi approaches demonstrating it is infringed. (Mot. at 11-13.) The parties agreed on a means plus function construction where, in part, the structure is defined by figure 7 of the '928

6

patent. (*Id*. at 11.) Nokia contends "Figure 7 shows that the claimed port definer module is a component of a maintenance entity ('ME')." (*Id*. at 12.) Nokia further contends "[t]he corresponding text and surrounding claim language confirms that the claimed port definer module is a component of a ME." (*Id*. at 12-13.)

Nokia contends Dr. Valerdi errs by pointing to "two separate MEs of different types that purportedly perform the function of the port definer module when used together in a particular configuration." (*Id*. at 13.) Nokia contends it is error to identify multiple, rather than one, ME here. (*Id*.)

CT responds that the agreed construction "does not address whether the port definer module must be a component of a single ME." (Opp. at 5.) First, CT contends the agreed structure cites more than just Figure 7 and Nokia has done nothing to show CT's infringement theory does not fall under those alternatives. (*Id*. at 5-6.) CT also contends that Nokia has not shown "how the location of the port definer module would affect the disclosed algorithms, which constitute the corresponding structure." (*Id*. at 6.) CT contends under the '928 patent provides the port definer module is configured to forward frames to predefined ports and does not require the port definer module to be located in a single maintenance entity. (*Id*.)

The Court is not convinced that the parties' agreed construction requires that the "port definer module" can only be practiced by a single ME rather than multiple. While Figure 7 and the supporting specifications do not discuss multiple MEs, they likewise do not disclose that it must be one. The Court does not find that Dr. Valerdi is applying a claim construction divergent from the Court's construction. Rather, it appears Nokia's complaint goes more to the issue of infringement and is thus best left to a jury.

### D.  MARKING OPINIONS

Nokia's final complaint relates to statements made by Dr. Valerdi concerning the sale of a product

7

Nokia contends should have been marked. (Mot. at 14-15.) Nokia contends that Dr. Valerdi's testimony that the CM-100 was, if ever, last sold in the US around 2008 or 2009 lacks any factual support. (*Id*. at 14.) Further, Nokia contends at deposition, Dr. Valerdi's only support for such statements was that "[h]e was informed by Counsel." (*Id*. at 15.) Nokia argues this is a violation of Rule 702. (*Id*.)

CT responds that Rule 703 permits Dr. Valerdi to do this. (Opp. at 6-7.) CT points to case law that provides an expert may presume facts that the proffering party will later prove to support his opinions. (*Id*. at 7.) CT also contends that Nokia's case law is distinguishable in that those cases addressed experts that had no expertise superior to the jury to address the issue at hand. (*Id*. at 7-8.)

Nokia missteps here. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) that Nokia cites for the notion that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," does not effectively address the issue of an expert relying on statements of counsel for factual support. Likewise, *Robroy Indus. — Tex., LLC v. Thomas & Betts Corp.*, 2017 U.S. Dist. LEXIS 54230, *30 (E.D. Tex. April 10, 2017) provides that an expert should not be permitted to simply summarize the facts of a case to the jury under the guise of expertise. This is not the issue here either.

However, CT also fails to put forth real support for the notion that an expert may rely on statements of counsel for the truth of the matter asserted and then parrot them to the jury. While *Williams v. Illinois*, 567 U.S. 50, 57 (2012) provides an expert may assume facts in preparing his opinions, it is still up to the proffering party to demonstrate those facts are true. CT has provided no contention that it intends to demonstrate the sales of the CM-100 occurred as Dr. Valerdi provides unless it intends to call counsel as witnesses.

The Court believes this issue is best addressed under FRE 703. While Nokia has not competently argued that statements of counsel[2] are not of the kind Dr. Valerdi "would reasonably rely on … in forming

---

[2] The Court notes that, while the parties do not raise it, Dr. Valerdi's deposition provides that he also considered Mr.

an opinion on the subject." Thus, Dr. Valerdi will only be permitted to testify as to the underlying fact if the probative value outweighs the prejudicial effect. Without being able to test the testimony or other evidence as to the sale of CM-100, Nokia is materially prejudiced. The Court finds this prejudice is greater than the probative value of an expert's recitation of the statements of counsel.

The court does not believe that Nokia has met its burden to demonstrate that Dr. Valerdi's testimony should be stricken. However, the Court **ORDERS** that Dr. Valerdi will not be permitted to testify as to the CM-100 sales without CT first introducing supporting evidence at trial.

IV. **CONCLUSION**

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Nokia's motion to strike as provided above.

**SIGNED this 26th day of March, 2024.**

_____<br>
ROY S. PAYNE<br>
UNITED STATES MAGISTRATE JUDGE

---

Bender's deposition as another datapoint in addition to Dr. Valerdi's conversation with Counsel.