IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CORRECT TRANSMISSION, LLC § | |
| § | |
| *Plaintiff,* § | |
| v. § | CIVIL ACTION NO. 2:22-cv-00343-JRG-RSP |
| § | |
| NOKIA OF AMERICA CORP., § | |
| § | |
| *Defendant.* § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff Correct Transmission, LLC's Motion to Strike Portions of Dr. Kevin Jeffay's Opening and Rebuttal Reports. (Dkt. No. 114); Motion to Strike Portions of Dr. Bill Lin's Opening and Rebuttal Reports (Dkt. No. 115); and Motion to Strike Portions of Dr. Henry H. Houh's Opening and Rebuttal Reports (Dkt. No. 116). After consideration, the Court **GRANTS IN PART** and **DENIES IN PART** the motions as provided below.

## I.   BACKGROUND

This case addresses the infringement and validity of five patents: U.S. Patent No. 6,876,669, U.S. Patent No. 7,127,523, U. S. Patent No. 7,283,465, U.S. Patent no. 7,768,928; and U.S. Patent No. 7,983,150. (Dkt. No. 1.) Dr. Jeffay opines for Nokia on the '150 patents, Dr. Lin opines for Nokia as to the '465 and '928 patents, and Dr. Houh opines for Nokia on the '669 and '523 patents.

CT's motions to strike complain of the same issues against all three experts. As such the Court addresses these motions together below.

## II.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

1

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

2

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. ANALYSIS
#### A. "UNHELPFUL OPINIONS"

CT complains that at various points the technical expert reports provide no expert opinion and either merely parrot statements of others or discuss irrelevant material. (Dkt. No. 114 at 4-6.)

First, CT argues ¶¶117-23, 158-59, 190-91, 199-200, 207-10, and 219-20 of Dr. Jeffay's opening report and ¶105 of his Rebuttal report impermissibly discuss parallel IPR proceedings. (*Id*. at 4.) CT contends such testimony is unhelpful as highlighted by this Court's standing MIL and is not tied to any proper opinion. (*Id*.) CT also contends that Dr. Jeffay's discussion is materially wrong in how he characterizes the PTAB's finding at the institution stage. (*Id*.) CT requests that the Court strike those paragraphs and "all testimony consistent with those paragraphs." (*Id*.)

In response, Nokia argues Dr. Jeffay reasonably relied on the IPR proceedings in forming invalidity and non-infringement opinions. (Dkt. No. 129 at 11 (citing *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 U.S. Dist. LEXIS 217003, at *8-9 (E.D. Tex. Dec. 17, 2019).) Nokia contends such testimony is best addressed in the context of motions *in limine* rather than a motion to strike. (*Id*.)

The Court declines to strike the IPR testimony and "all testimony consistent with those

paragraphs." While CT correctly notes that discussion of IPRs is not permitted at trial absent leave of court, this has been addressed through in *limine* rulings, most specifically Standard MIL No. 13. *See United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 217003, *8-9. As to "all testimony consistent with those paragraphs," CT has failed to identify what testimony it would ask the Court to strike. No further relief is necessary on this record. For the same reason, the Court declines striking Dr. Houh's and Lin's reports.

Second, CT argues ¶¶339-61 of Dr. Jeffay's opening report and ¶105 and 223-33 of his rebuttal report relating to marking should be stricken as providing no actual expert testimony. (Dkt. No. 114. at 4-5.) Rather, CT contends this section merely parrots what he was told by Counsel or restates what is available from the face of the cited documents. (*Id*.)

Nokia responds that while Dr. Jeffay recites factual support to his opinions, he offers the opinion that certain Orckit products practiced each of the asserted patents and failed to mark those products. (Dkt. No. 129 at 11-12.)

The Court agrees with Nokia here. Dr. Jeffay's recitation of the factual support for his ultimate opinion that damages are statutorily limited under 35 U.S.C. §287 is required by the rules and is helpful to the jury. Thus, such an opinion is properly offered under Dr. Jeffay's expertise. Dr. Lin's and Dr. Houh's reports on the same point are likewise not stricken.

Third, CT argues ¶¶223-41 of Dr. Jeffay's rebuttal report as to willful and indirect infringement should be stricken as unhelpful to the jury. CT argues that Dr. Jeffay provides legal conclusions that only the Court is qualified to reach. (Dkt. No. 114 at 5-6.) CT contends this is not an expert opinion but rather is a legal argument that should be stricken. (*Id*.)

Nokia responds that this is not a legal conclusion but rather Dr. Jeffay's technical opinion. (Dkt. No. 142. at 13-14.) Nokia contends Dr. Jeffay's analysis of the 2017 Letter from Orckit IP,

deposition testimony, technical documentation, and discovery responses is entirely within his expertise. (*Id*.)

The Court agrees with CT only as to Dr. Jeffay's "analysis" of the Orckit IP letter. There is no expertise in reading the face of a letter to find no mention of infringement. The legal conclusion that because there is no mention of infringement, there is no knowledge of infringement is not an appropriate opinion for a technical expert to offer. As such the Court strikes the portions of ¶¶ 226–28, 239–41 of Dr. Jeffay's rebuttal report relating to the letter. Likewise, the Court strikes portions of ¶¶524 and 535 of Dr. Houh's rebuttal report, and ¶¶177-85 of Dr. Lin's rebuttal report for the same reasons.

Fourth, CT complains that Dr. Jeffay's rebuttal report at ¶232 offers no expert opinion and relies on no real evidence, ignoring contrary evidence. (Dkt. No. 114 at 6.) CT argues that Dr. Jeffay's reliance on Nokia's interrogatory response and choice to ignore a variety of deposition testimony is grounds to strike this testimony. (*Id*.)

Nokia responds that Dr. Jeffay is permitted to rely on Nokia's interrogatory response. (Dkt. No. 129 at 14-15.) However, during the pretrial conference of the companion *Smartpath* case, Nokia agreed that it would not refer to the interrogatory in front of the jury.  Therefore Drs. Jeffay, Lin, and Houh are not permitted to rely upon it before the jury.  They may testify based upon the testimony of Nokia's corporate representative on the subject.

### B.  UNTIMELY DISCLOSURES

CT argues that Nokia made late disclosures of obviousness combinations, motivations to combine, and non-infringing alternatives, and that the portions of Dr. Jeffay's report on such issues should be stricken. (Dkt. No. 114 at 6-13.)

First, CT alleges "Nokia failed to disclose the specific motivations to combine prior art in its invalidity contentions in the manner listed within Dr. Jeffay's report." (*Id*. at 7.) Rather, CT

5

contends Nokia provided only conclusory motivation to combine references without a single particularized motivation. (*Id*.) CT contends there can be no good cause for such a late disclosure, and because there is no credible explanation for such a late disclosure, it would prejudice CT, and any importance cannot outweigh the delay and prejudice to CT. (*Id*. at 8.)

Nokia responds that it provided sufficient earlier disclosure of its motivation to combine. (Dkt. No. 129. at 2-6.) Nokia notes that its invalidity contentions provided several primary references against the '150 patent, an appendix of secondary references for each patent, an explanation "that it would have been obvious to combine any of the primary references with each other or to combine any of the primary references with one of the secondary references, an extensive description of the background and state of the art, and detailed motivation to combine references." (*Id*. at 2-3.) Nokia contends that it identified the motivations of the teaching of the patents regarding what was already known in the prior art, the nature of the communications field to combine references, the finite number of solutions and expectation of success, and the fact that combining the references would have resulted from application of known techniques to known methods yielding predictable results. (*Id*.) Nokia additionally provides particularized motivations to combine Togazaki with Voit and Abe with Busi. (*Id*. at 3-5.)

The Court finds that Nokia's invalidity contentions provide sufficient notice to support Dr. Jeffay's discussion of the motivations to combine. This Court's Patent Rules mandate invalidity contentions to provide fair notice of a party's invalidity case and do not require a party to prove their invalidity case in the contentions. *See Personalized Media Communs., LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, 2021 U.S. Dist. LEXIS 16909, at *13 (E.D. Tex. Jan. 29, 2021). While Nokia's contentions identify the various references as groups rather than individually, they still provide notice of the opinions that Dr. Jeffay ultimately provides. (*See* Dkt. No. 114-3 at 251-262.)

For example, the complained of ¶¶142-45 provide motivation to combine Togazaki with Voit based on commonality in the technical field relating to failure protection in layer 2 networks and concerned with speed, reliability, resiliency, and network efficiency. (*See* Dkt. No. 114-1 at ¶¶142-45.) These commonalities are identified particularly between these two references in the invalidity contentions. (*See* Dkt. No. 129-6 at 1-2.) Such a disclosure is sufficient.

Drs. Houh's and Lin's similar testimony is also sufficiently supported by Nokia's invalidity contentions.

Second, CT contends Dr. Jeffay's rebuttal report opinions on non-infringing alternatives should be stricken. (Dkt. No. 114 at 9-11.) CT argues that Nokia failed to properly give notice of its non-infringing alternatives or associated arguments in response to interrogatories proffered by CT early in the case. (*Id*.) CT further argues that Nokia should not be permitted to present these non-infringing alternatives and associated arguments in a rebuttal report, preventing CT from meaningfully responding. (*Id*. at 11-13.)

Nokia responds that it adequately identified all the non-infringing alternatives in detail in its interrogatory responses. (Dkt. No. 142 at 6-10.) Nokia also argues it is entirely appropriate for it to raise its non-infringing alternative arguments in this manner since the burden of proving damages is on CT, and Nokia needed CT's infringement expert report before it could respond with its non-infringing alternative positions. (*Id*.)

The Court finds that Dr. Jeffay's discussion of non-infringing alternatives should be stricken as untimely and ultimately irrelevant in light of Nokia's decision to offer no damages opinion tying any non-infringing alternative to a proper damages analysis.

The Court agrees with CT that it is Nokia's burden to show that an alternative is non-infringing and thus should have been raised in an opening report. In this case non-infringing

alternatives are only relevant to a reasonable royalty damages analysis. Under such a damages analysis the Court finds that a non-infringing alternative analysis is more similar to an affirmative defense whose burden is upon the defendant. First, a patentee having proven infringement need not make any showing to be entitled to at least nominal damages. *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,* 895 F.2d 1403, 1406 (Fed.Cir.1990) ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated."). Second, showing that no non-infringing alternatives exist is not a requirement to prove a reasonable royalty. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)*, modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (describing factors, not requirements, for reasonable royalty awards.); *see also RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, No. CV 19-1515-RGA, 2022 WL 17084156, at *4 (D. Del. Nov. 18, 2022) ("The existence of alternative products may affect some of the fifteen factors, but the entire possibility of an award does not turn on the alternative's existence."). Thus, a non-infringing alternative analysis is not a negative defense as it is not a required part of the showing for the party proffering damages. Further, the operation of a non-infringing alternative in a reasonable royalty analysis is to limit damages to the advantage of defendants. *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1347, 51 U.S.P.Q.2d 1556 (Fed. Cir. 1999) (noting that the district court ruled that the difference in production costs between infringing and non-infringing products "effectively capped the reasonable royalty award"). As such a non-infringing alternative analysis as part of a reasonable royalty damages theory acts more similarly to an affirmative defense. This further supports the Court's finding that the technical showing that an alternative is non-infringing is the burden of Nokia and should have been presented in an opening technical report. Nokia is correct under

Federal Circuit case law that damages is the burden of CT as the plaintiff. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."). However, this does not permit Nokia to withhold its evidence of non-infringing alternatives until rebuttal.[1]

The Court further finds that Nokia's late disclosure here is grounds to exclude this testimony. Nokia's delay between opening and rebuttal report, while a short delay, is significant at this late stage. CT will be significantly prejudiced by Nokia's late disclosure as it prevents CT from providing expert rebuttal without leave of the Court. Nokia's argument that its delay is reasonable is unavailing. The Court is not convinced that Dr. Jeffay's non-infringing alternative analysis is truly in response to CT's infringement analysis. First, as the Court details above, the burden is on Nokia and relates to damages, not a response to CT's infringement analysis. Second, CT provided infringement contentions early in this case detailing its infringement position to Nokia. To the extent, if any, that Dr. Jeffay's non-infringing alternative analysis is a response to CT's infringement argument, CT sufficiently disclosed its infringement position in its infringement contentions to provide a responsive non-infringing alternative analysis.

Separately, the Court finds that Dr. Jeffay's non-infringing alternative is not relevant to this case. Because none of Nokia's experts provide any financial analysis of the impact of a non-infringing alternative to a reasonable royalty--i.e. rather than infringe Nokia would implement a non-infringing alternative at a certain cost--presenting these alternatives will only operate to confuse the jury.

---

[1] Further, this Court previously instructed that non-infringing alternatives are the burden of defendants. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011), *objections overruled,* No. 2:06-CV-348, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011) ("[Defendant], therefore, bears the burden of proving that the non-infringing alternatives were 'available' to it during the accounting period.").

Thus, the Court strikes ¶¶ 242-50 of Dr. Jeffay's rebuttal report. As the same reasoning applies to Drs. Houh's and Lin's discussions of non-infringing alternatives, the Court strikes ¶¶241-47 of Dr. Houh's rebuttal report and ¶¶276-91 of Dr. Lin's rebuttal report.

### C. RELIANCE ON INADMISSIBLE EVIDENCE

CT's final complaint is that Dr. Jeffay relies on the deposition of a prior patent owner taken in another case and the interrogatory responses of Nokia. (Dkt. No. 114 at 13-14.) CT contends this is not the kind of evidence an expert like Dr. Jeffay would rely upon and should be excluded in their own right. (*Id*.)

Nokia responds that such reliance is reasonable. (Dkt. No. 142 at 12-13.) First, Nokia contends that Dr. Jeffay may rely on hearsay such as the cited deposition and that the deponent has sufficient knowledge for Dr. Jeffay to rely upon. (*Id*. at 12.) Second, Nokia contends that an expert may rely on interrogatory responses. (*Id*. at 14.)

The Court finds Dr. Jeffay's reliance on this evidence is not grounds to strike the complained of portions. It is black-letter law that an expert may rely on hearsay testimony. *See First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) ("Experts may rely on hearsay evidence in forming their opinions."). Of course, if the expert attempts to repeat the hearsay to the jury, a proper objection may be urged. CT's concern with the deponent's underlying level of knowledge on the issue at hand is best explored on cross-examination as it fundamentally goes to reliability.

For the same reasons, the Court declines to strike Drs. Houh's and Lin's discussion of the same prior deposition and interrogatory responses in their report, subject to the same observation about not repeating hearsay to the jury.

### IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** CT's motions to strike the

opening and rebuttal reports of Drs. Jeffay, Houh, and Lin as provided above.

**SIGNED this 26th day of March, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE