IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CORRECT TRANSMISSION, LLC § § *Plaintiff*, § v. § § NOKIA OF AMERICA CORP., § § *Defendant*. § | § § § § CIVIL ACTION NO. 2:22-cv-0343-JRG-RSP § § § § |

**MEMORANDUM ORDER**

Before the Court is Plaintiff Correct Transmission, LLC's Motion to Strike Certain Opinions of Expert Melissa A. Bennis. (Dkt. No. 117.) After consideration, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion as provided below.

**I.    BACKGROUND**

This case addresses the infringement and validity of five patents: U.S. Patent No. 6,876,669, U.S. Patent No. 7,127,523, U. S. Patent No. 7,283,465, U.S. Patent no. 7,768,928; and U.S. Patent No. 7,983,150. (Dkt. No. 1.) Ms. Bennis provides damages opinions on behalf of Nokia.

**II.    APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

2

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS
#### A.   THE NETWORKS[3] LICENSE

CT first complains of ¶¶74-75, 79, 91, 155, 233 (first and second bullet) as inappropriately relying on "a proposed purchase transaction in which Orckit proposed to sell its patent portfolio to Networks[3]" to limit damages. (Mot. at 2.) CT complains it is improper to use an unconsummated patent sale to limit a reasonable royalty in this way and the proposed sale was not economically comparable to the hypothetical negotiation in this case. (*Id*. at 2-4.)

Nokia counters that Ms. Bennis did not advocate for a universal ceiling but rather advocated that in this case, in light of the particulars of this case, the transaction suggests a limit on damages. (Opp. at 3.) Nokia points to Ms. Bennis's explanation that "[t]he hypothetical negotiators would consider that Orckit was willing to sell its entire patent portfolio around the time of the hypothetical negotiation for $5 million to $8 million." (*Id*.) Nokia further counters that case law supports the admission of patent sales transactions as admissible and relevant. (*Id*. at 4-5.)

CT replies that Ms. Bennis's report does not demonstrate that the evidence has any actual relevance. (Reply at 1-2.) CT contends that at her deposition Ms. Bennis was unable to provide any criteria that she would consider in deciding when and whether a patent purchase price establishes a ceiling on a reasonable royalty. (*Id*. at 3 (citing Bennis Dep. at 154:1-12; 155:18-157:9; 157:23-160:17; 161:8-162:17).) Ultimately, Ms. Bennis provides "I've tried to read Paragraph 180 to put into the context the language. It's really not that more involved than suggesting that this is a benchmark worthy of consideration. That's my opinion." (Bennis Dep. at 166:16-24.) CT contends that in light of this, Ms. Bennis offers no reliable analysis or explanation for her opinions. (Reply at 2.)

The Court finds the Networks³ negotiation is not relevant to a hypothetical negotiation. While an offer to sell a patent may be relevant, Ms. Bennis has presented insufficient grounds to demonstrate the Networks³ transaction—an unconsummated offer to purchase--is relevant here. Ms. Bennis's blanket assertion that it "is a benchmark worthy of consideration" and discussion of a third party's finding that the transaction would not be profitable is insufficient here. In effect, Ms. Bennis is acting as a conduit for the opinion of a third party in a manner that significantly limits CT's ability to cross-examine that opinion. Further, the Networks³ negotiation is acutely problematic where the offer was made by and to third parties, not the plaintiff, especially in a foreign country where claims were being asserted against any proposed proceeds.

CT's motion to strike ¶¶74-75, 79, 91, 155, 233 (first and second bullet) of Bennis's report is **GRANTED**.

### B. RECITATION OF TECHNICAL EXPERTS

CT argues that ¶¶109-121 should be stricken as a repetition of the conclusions of Nokia's technical experts that "not all of the Accused Products have the accused features, and that not all purchasers of the Accused Products practice the method and system claims asserted by CT (¶¶109-121)." (Mot. at 5.) CT complains that Ms. Bennis cannot in this way act as the mouthpiece of another witness and that the underlying opinions of Nokia's technical experts are counter to the evidence in this case. (*Id*. at 5-7.)

Nokia responds it is proper for Ms. Bennis to rely on the opinions of Nokia's technical experts. (Opp. at 6.) Nokia contends Ms. Bennis "uses these facts in her analysis of the damages base and criticizes Mr. Dell's failure to adjust his damages base to account for the extent of use of the accused features." (*Id*. at 7.) Nokia argues CT's position amounts to a dispute on the reliability of the evidence underlying Ms. Bennis's opinion, which should be explored on cross-examination not stricken. (*Id*.)

The Court agrees with Nokia. An expert is permitted to rely upon the testimony of other witnesses in developing their opinions, including the testimony of other experts. That is what Ms. Bennis has done here. Likewise, CT's contention that the underlying opinions are counter to the evidence is best addressed on cross-examination, not under *Daubert*.

### C. LACK OF MARKING

CT next contends ¶129 should be stricken. (Mot. at 7.) CT argues Ms. Bennis should not be permitted to opine that damages must be reduced in this case for lack of marking. (*Id.*) CT contends Ms. Bennis' opinions are based on the unsupported opinions of Nokia's technical expert witnesses and amount to impermissible legal instruction. (*Id.*)

Nokia counters that experts are permitted to rely on each other and "Ms. Bennis responds to Mr. Dell's opinions setting forth an alternative running royalty assuming damages begin from the date of the complaint, in the event that Nokia's marking defense is accepted." (Opp. at 11.) Nokia argues Ms. Bennis identifies the basis of her marking opinion and then applies the result of that opinion to the damages theory. (*Id.*)

The Court agrees with Nokia. First, the Court has found Nokia met its initial burden of production as to marking thus requiring CT to demonstrate that §287 is satisfied. Dkt. No. 235. As such, Ms. Bennis may premise her opinion with "should marking not be found."

### D. "INADEQUATE" RECORDKEEPING

CT takes issue with Ms. Bennis's contention that "Nokia's accounting system does not allow for revenue to be tied to certain specific models of the products at issue, Dell's running royalty analysis is inflated, and he should have used a lump-sum royalty instead" while at the same time arguing "Nokia's inadequate data production" supports Ms. Bennis's lump-sum royalty theory. (Mot. at 8.) CT contends this argument amounts to a position that Nokia's inadequate record-keeping can be used to limit CT's compensation for Nokia's infringement, that Nokia can

5

benefit from its own shortcomings. (*Id*.) CT argues that because a hypothetical negotiation analysis necessarily involves uncertainty and that this Court has held a damages expert may include all potential uses in a royalty base when defendants failed to produce data allowing for apportionment, its expert is permitted to use Nokia's produced data without criticism. (*Id*.)

CT further argues Nokia could have produced more granular sales data but did not. (*Id*. at 9, n3.) In this light, CT contends Nokia has no grounds to criticize Mr. Dell. (*Id*.)

Nokia responds that Ms. Bennis's criticism is directed not to mandating a lump-sum royalty but rather that Mr. Dell should have adjusted his royalty base as the sales data it is based on includes non-accused models. (Opp. at 8.) Nokia contends such a failure is not permissible under Federal Circuit case law. (*Id*.) Nokia also argues that CT's arguments based on alleged discovery misconduct are misleading. (*Id*.) Nokia contends its witnesses never represented that there is more granular data that could have been used. (*Id*. at 9.)

The Court agrees with Nokia. First, *Daubert* is not the appropriate vehicle for addressing discovery disputes. As such the Court does not find that Nokia is benefiting from any discovery misconduct. Second, Ms. Bennis's opinions that Mr. Dell should have discounted certain figures to account for included, but unaccused, products is consistent with the case law. *See Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989 (Fed. Cir. 2023) (finding the Court should have stricken expert testimony relying on 10-K sales data that failed to account for "included sales of irrelevant products and services.").

### E.  FUNDING AND PATENT ACQUISITION AGREEMENT

CT also requests the Court strike ¶¶165-66 as discussing a funding agreement related to CT's acquisition of the Asserted Patents. (Mot. at 9.) CT contends this would be inconsistent with the Court's standing order on motions *in limine* precluding discussion of litigation funding or attorney-fee compensation or structure. (*Id*.)

Nokia does not specifically respond to this argument. (*See* Opp.) Thus the Court grants CT's request to strike ¶¶165-66 as unopposed.

### F.  NON-INFRINGING ALTERNATIVES

CT argues ¶¶186-90 should be stricken since Ms. Bennis provides no independent analysis and merely parrots opinions of other experts. (Mot. at 9.) CT contends the underlying opinions are improper as not timely disclosed. (*Id.*) CT also contends Ms. Bennis performs no economic analysis with the non-infringing alternatives that would justify her reliance on Nokia's technical experts. (*Id*. at 10.)

Nokia responds it is appropriate for Ms. Bennis to rely on Nokia's technical experts and that "Ms. Bennis opines that the hypothetical negotiators would have considered the existence of NIA's in determining an appropriate royalty." (Opp. at 12.)

The Court strikes ¶¶186-90 of Ms. Bennis's report. While, as discussed above, an expert is permitted to rely on other experts in preparing her own opinion, that is not what Ms. Bennis has done here. Rather, Ms. Bennis recognizes that other experts have opined that non-infringing alternatives exist and then notes that this should be considered. (*See* Dkt. No. 117-1 at ¶233.) Ms. Bennis offers no opinions regarding how the non-infringing alternatives should factor into the hypothetical negotiation. (*See id*.) Without providing any expert analysis, Ms. Bennis will not be permitted to testify regarding non-infringing alternatives. *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *3 (E.D. Tex. Apr. 10, 2017).

### G.  MEANING OF LICENSES

CT contends in ¶¶194 and 233 (eighth bullet) Ms. Bennis interprets an agreement "by purporting to tie its terms with activities such as 'use,' distribution,' and 'documentation'" to conclude the agreement is a supplier distributor agreement and thus not comparable for a hypothetical negotiation. (Mot. at 10-11.) CT argues these issues are a matter of contract

interpretation reserved for the Court to decide and as Ms. Bennis is not a lawyer she has no expertise to offer here. (*Id*. at 11) CT further argues that Ms. Bennis does not offer opinions explaining an industry term or interpreting the license based on trade or usage that an expert may be permitted to offer. (*Id*.) Finally, CT contends it would be confusing to permit Ms. Bennis to opine that "Orckit has previously entered into licenses with ALU and Nokia that covered certain of its patented technology." (*Id*.) CT argues this would lead the jury to believe that Nokia is already licensed. (*Id*.)

Nokia responds that Ms. Bennis does not offer opinions interpreting the agreement "in a legal manner." (Opp. at 10.) Rather, Nokia contends Ms. Bennis merely quotes and summarizes the agreement. (*Id*.) Nokia points to Ms. Bennis's deposition to support that Ms. Bennis only commented to "distinguish [the agreement] because it was a supplier-distributor agreement" and had no intention of offering legal opinions at trial. (*Id*. at 11.)

The Court agrees with Nokia. Ms. Bennis's report largely simply quotes from the agreement and offers no legal opinions. The only arguably "legal opinion" Ms. Bennis offers is that the agreement offers a license to the asserted patents because the agreement relates to a product Nokia contends practiced the asserted patents. (Dkt. No. 117-1 at ¶194.) Ms. Bennis offers this opinion to provide context to her opinion that "in the context of the larger supplier/distributor relationship precipitated by the agreement" such a license is not relevant to the hypothetical negotiation. (*Id*.) Because the only arguably legal opinion is not Ms. Bennis's ultimate opinion and she could have just simply have argued "to the extent this agreement covers the patents in suit it is not relevant as part of a larger supplier/distributor relationship," it does not support striking the testimony.

Further, Ms. Bennis's testimony that "Orckit has previously entered into licenses with ALU

8

and Nokia that covered certain of its patented technology," (*Id*. at ¶233), is not a legal opinion. Rather it simply summarizes the intellectual property portion of the agreement at issue. While the wording may be somewhat confusing, that is not sufficient grounds to strike the testimony here.

### H. MR. PITCOCK'S EMPLOYMENT HISTORY

CT argues Ms. Bennis should not be permitted to comment on Mr. Pitcock's prior employment, in particular a dispute with prior law firms. (Mot. at 11-12.) Nokia argues this is relevant information to the hypothetical negotiation as information the parties would know about each other when entering the hypothetical negotiation. (Opp. at 12-13.)

The Court finds that such testimony has no relevance to the issues of this case and strikes such testimony from Ms. Bennis's report, in particular ¶20.[1]

### IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** CT's motion to strike Ms. Bennis' report as provided above.

**SIGNED this 26th day of March, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[1] The Court likewise **GRANTS** CT's motion for protective order (Dkt. No. 87) on this same point. Mr. Pitcock's employment history is not relevant in this case and Nokia's exploration into such would be harassing.